**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DONALD COE, et al.,         )
individually and on behalf of themselves  )
and all others similarly situated,      )
                           )
            Plaintiffs,     )
                           )
v.                           )    Case No. 22-2047-TC-ADM
                           )
CROSS-LINES RETIREMENT       )
CENTER, INC., et al.,         )
                           )
           Defendants.    )

**MEMORANDUM AND ORDER**

This case involves living conditions for elderly and/or disabled, low-income residents at an apartment complex in Kansas City, Kansas, called Cross-Lines Retirement Center ("Cross-Lines"). Plaintiffs Donald Coe, Linda Smith, and Edward Yost are Cross-Lines residents who brought this action individually and on behalf of a purported class of residents. They allege that the apartment complex owner, Cross-Lines Retirement Center Inc., and its property manager, Young Management Corporation, failed to provide safe and sanitary conditions, and to make reasonable accommodations to support disabled residents. This matter is now before the court on plaintiffs' Motion to Compel Discovery and Remove Confidential Designations. (ECF 45.) As explained in further detail below, plaintiffs' motion is granted in part and denied in part.

## I.      BACKGROUND

Plaintiffs' complaint paints a portrait of Cross-Lines as a fifty-year-old retirement center that has been "left to rot." (ECF 1, at 1.) They allege that when Cross-Lines first opened, it was a model center dedicated to promoting senior citizens' health, security, and happiness. But now, according to plaintiffs, its residents are subjected to "bed-bug infestations, decaying rodent bodies,

1

flooding, leaking, and mold," not to mention "medieval sanitation, a frightening deficit of secure fire-evacuation routes for the disabled, lack of reasonable security measures, a reduction in activity offerings, and, generally, living conditions that are far more likely to lead to a premature demise than to longer living."   (*Id.* at 1, 5 (quotations omitted).)   Plaintiffs bring this case as a "proposed class action and mass tort which seeks injunctive relief and damages."   (*Id.* at 2.)   They assert claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Fair Housing Act,  42 U.S.C. § 3601 *et seq.*, as well as for breach of duties imposed by common law and Kansas statutes.

Discovery is underway for the class-certification stage of the case.   (ECF 23.)   By way of the current motion, plaintiffs ask the court to compel defendants to produce (1) reservation-of-rights letters tendered by defendants' insurance companies, (2) premises inventories of individual apartment units, and (3) unredacted rent rolls for the purported class period.   Plaintiffs also ask the court to strike the "confidential" designation on the insurance policies defendants already produced.

## II.   RESERVATION-OF-RIGHTS LETTERS ARE NOT "INSURANCE AGREEMENTS" SUBJECT TO MANDATORY DISCLOSURE

Plaintiffs first ask the court to compel production of defendants' correspondence with their liability insurance companies pursuant to Document Request No. 2, which seeks:

> All insurance agreements, surety bond, or other contractual agreement under which an insurance business may be liable to satisfy part or all a possible judgment in this case, and/or to indemnify or reimburse for payments made to satisfy the judgment, **along with a copy of all tender letters and response letters (including any reservation of rights letters).**

(ECF 45-2, at 2 (emphasis added).)   Defendants already produced copies of the insurance policies themselves, but plaintiffs seek the further production of any reservation-of-rights letters that an

insurer tendered, as well as defendants' responses to the same.   Defendants objected to producing any such tender and response letters based on grounds of relevance and privilege.   (ECF 45-3, at 3.)   In the current motion, plaintiffs assert that the court need not address defendants' relevance objection (thereby tacitly conceding the irrelevance of the documents)[1] because reservation-of-rights letters are "insurance agreements" subject to Federal Rule of Civil Procedure 26(a)(1)(A)'s mandatory-disclosure requirement.   Defendants dispute that Rule 26(a)(1)(A) applies to these insurance-related communications.

Rule 26(a)(1)(A) requires a party to disclose certain information to the other parties in an action without awaiting a discovery request.   This includes "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." FED. R. CIV. P. 26(a)(1)(A)(iv).   The dispute here is whether the language "any insurance agreement" covers reservation-of-rights letters.

As an initial matter, the court addresses plaintiffs' argument that "the substantive law of Kansas applies to whether a reservation-of-rights letter is an insurance agreement" under Rule 26(a)(1)(A)(iv).   (ECF 45, at 2.)   Plaintiffs cite no support for this assertion, and it lacks merit. Almost without exception, federal law governs the interpretation of the Federal Rules of Civil Procedure.   *See Robbins Hardwood Flooring, Inc. v. Bolick Distribs. Corp.*, 79 F. App'x 81, 82 (5th Cir. 2003) ("We also review questions of federal law de novo, including the district court's

---

[1] Courts have recognized that reservation-of-rights letters rarely are relevant to substantive causes of actions or defenses, other than in cases involving insurance coverage disputes.   *See, e.g., Sea Salt, LLC v. Bellerose*, No. 2:18-cv-00413-JAW, 2020 WL 5032466, at *2 (D. Me. Aug. 25, 2020); *Southern Rehab. Network, Inc. v. Sharpe*, No. 5:99CV353-BR, 2000 WL 33682699, at *4 (E.D.N.C. Jan. 14, 2000) (holding reservation-of-rights letters were not relevant in an employment case); *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, No. 01 C 1618, 2003 WL 1524649, at *1 (N.D. Ill. March 20, 2003) (distinguishing cases in which an insurer is being sued directly).

interpretation of the Federal Rules of Civil Procedure."); *Foster v. Lawrence Mem'l Hosp.*, 809 F. Supp. 831, 835 (D. Kan. 1992) ("In federal court, procedural matters are governed by federal law, not state procedural law."); *Redus v. State Farm Mut. Auto. Ins. Co.*, No. CIV-17-724-W, 2018 WL 8755502, at *1 (W.D. Okla. Jan. 9, 2018) ("Federal law, as interpreted by the United States Supreme Court, the Tenth Circuit and Tenth Circuit district courts, governs the procedural issues presented by the parties . . . ."); *Davenport v. Sugar Mountain Retreat, Inc.*, 2009 WL 3415240, at *2 (N.D. Okla. Oct. 16, 2009) ("[T]he case was removed to federal court and this Court must apply Rule 12(b)(6), as interpreted in *Twombly*, to determine if plaintiff's amended complaint states a claim."); *see also Univ. of Tex. at Austin v. Vratil,* 96 F.3d 1337, 1340 (10th Cir. 1996) ("Discovery is a procedural matter, which is governed by the Federal Rules of Civil Procedure." (quotation omitted)); *Sea Salt, LLC,* 2020 WL 5032466, at *2 ("Whether the [reservation-of-rights] letter is subject to discovery is governed by the civil rules governing discovery.").   Contrary to plaintiffs' suggestion, the court has found no case applying state law to interpret the language of Rule 26(a)(1)(A)(iv).   Thus, plaintiffs' cited cases that deem reservation-of-rights letters to be insurance agreements under Kansas law—with no analysis of Rule 26(a)(1)(A)(iv)—are inapposite to the question at hand.   (ECF 45, at 2-3.)   Similarly, the court finds no useful guidance in the unpublished Missouri state cases that plaintiffs cite, which do not reference Rule 26(a)(1)(A)(iv).   (*Id.* at 4.)

Accordingly, the court turns to federal law to determine whether Rule 26(a)(1)(A)(iv)'s reference to "any insurance agreement" includes reservation-of-rights letters.   Few courts have addressed this issue.   *See Native American Arts, Inc.*, 2003 WL 1524649, at *1 ("[N]o reported case has dealt directly with the question whether the Rule's reference to 'any insurance agreement' embraces an insurer's reservation-of-rights letter."); *Excelsior College v. Frye,* 233 F.R.D. 583,

4

586 (S.D. Cal. 2006) ("Not surprisingly, there is no published case law defining specifically what insurance information must be produced . . . ."). But the court is persuaded by those that have. These cases point out that the plain language of Rule 26(a)(1)(A)(iv) only requires disclosing insurance policies themselves and not other insurance-related documents or later agreements entered by the insured with its insurer. In *Excelsior College*, the court recognized that a plain reading of the rule "indicates it is clearly designed for parties to produce documentation of any insurance policies that *give rise to* an insurer's obligation to indemnify or hold its insured harmless for a judgment . . . not any agreements that may *negate* such an obligation." 233 F.R.D. at 585-86 (emphasis added) (denying motion to compel documents "regarding any release of [insurer's] obligations under the policy"). Similarly, the court in *Sea Salt, LLC* noted that "other courts have relied upon the plain language of the Rule to conclude that other insurance-related documents, including reservation-of-rights letters, are not discoverable." 2020 WL 50322466, at *2 (collecting cases).

This reasonable interpretation is buttressed by the rule's historical underpinnings. Subsection (iv) of Rule 26(a)(1)(A) had previously fallen under Rule 26(b) and was titled "Insurance Policies." When the rule was renumbered in 1993, the heading was dropped, but the Advisory Committee Notes indicate that "the drafters intended the rule to continue to apply to insurance policies." *Excelsior College*, 233 F.R.D. at 585. The Advisory Committee Notes to the 1993 Amendments explain the renumbering and state that the subsection "provides that liability insurance policies be made available for inspection and copying." *See also Sea Salt, LLC*, 2020 WL 5032466, at *2 ("[T]he Advisory Committee note states that the Rule 'provides that liability *insurance policies* be made available . . . .'" (emphasis in original)). As one court recently noted,

"If the drafters of the Rule had intended other insurance documents, including a reservation-of-rights letter, to be subject to discovery in every case, the drafters could have easily stated so."   *Id.*

Furthermore, case law directly addressing whether reservation-of-rights letters fall under Rule 26(a)(1)(A)'s mandatory disclosure requirements consistently hold that they do not.   *See, e.g., id.* at *2 (holding reservation-of-rights letters are not subject to Rule 26(a)(1)(A)'s mandatory initial disclosure requirement); *Native Am. Arts, Inc.*, 2003 WL 1524649, at *2 (holding the term "insurance agreement" does not embrace reservation-of-rights letters and that the mandatory disclosure provision of Rule 26(a)(1) requires "nothing more than the disclosure of the insurance policies themselves"); *see also Salazar v. Bocanegra*, No. 12cv0053 MV/LAM, 2012 WL 12892780, at *2 (D.N.M. July 27, 2012) ("The Court finds no support for Plaintiff's motion to compel reservation-of-rights letters or agreements where a denial of coverage has not been asserted in this case, and where insurance coverage is not the basis of the suit."); *Excelsior College*, 233 F.R.D. at 586 (holding "information regarding any release of [insurer's] obligations under the policy" exceeds the scope of Rule 26(a)(1), "which only mandates the production of agreements that may create on obligation on [insurer's] part, not any agreements that may negate such an obligation"); *compare Lively v. Reed*, No. 1:2 CV 119 MOC WCM, 2021 WL 1176049, at *4 (W.D.N.C. March 29, 2021) (compelling production of insurer agreement to provide coverage for a judgment that exceeds policy limits and distinguishing the same from a reservation-of-rights letter).

For these reasons, the court concludes that any reservation-of-rights letter defendants received from their insurers is not subject to the mandatory disclosure provisions of Rule 26(a)(1)(A)(iv).   And plaintiffs do not otherwise articulate how such correspondence is relevant

to the claims or defenses.  Their request to compel production of these communications is therefore denied.[2]

## III.   PREMISES INVENTORIES ARE RELEVANT, BUT THE BURDEN OF PRODUCING THEM WILL BE MINIMIZED BY SAMPLING

Next, plaintiffs ask the court to compel defendants to produce the "premises inventories" for each of Cross-Lines's 205 apartment units since February 1, 2017.[3]  Premises inventories are forms that Kansas law requires to be completed when a tenant takes possession of a unit that "detail[] the condition of the premises and any furnishings or appliances."  KAN. STAT. ANN. § 58-2548.   Plaintiffs' Document Request No. 34 seeks production of these premises inventories for all Cross-Lines units.  (ECF 45-1, at 9; ECF 45-2, at 9.)   Defendants agreed to produce the premises inventories only for the three named plaintiffs.  (ECF 45-3, at 11; ECF 45-4, at 10.)   In response to plaintiffs' motion to compel the inventories for the remaining units, defendants object that producing these inventories would be disproportional to the needs of the case because their relevance is low and the burden of producing the inventories is high.   (ECF 46, at 6-7.)

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery.   Under the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).   In other words, considerations of both relevance and proportionality expressly govern the scope of discovery.   Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

---

[2] Because the court holds that defendants need not produce reservation-of-rights letters, the court does not reach defendants' alternative argument that the letters are privileged.

[3] The parties agree that Cross-Lines has 208 units, but that Cross-Lines rents only 205 units.  (ECF 45, at 7 n.27.)  During the discovery conference on July 14, plaintiffs' counsel clarified the time frame for the inventories sought.   (ECF 46-1, at 30.)

7

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).   In evaluating proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   FED. R. CIV. P. 26(b)(1).

To evaluate relevancy, the court has reviewed copies of the inventories signed by plaintiffs on their respective move-in dates in 2014, 2015, and 2019, as well as a blank form in a slightly different format that Cross-Lines apparently began using in mid-2019.[4]   (ECF 46-3.)   The older premises inventory forms do not specifically ask about the alleged conditions that form the basis of this lawsuit (e.g., bug and rodent infestation, leaking plumbing, and mold), but they do include a place for marking whether the unit is "decent, safe, and sanitary."   (ECF 46-3, at 6, 7, 10.)   The newer form likewise asks the tenant to certify that the unit is "decent, safe, and sanitary," but also includes space to memorialize "Vermin/Pests Infestation" by room.   (*Id.* at 2-4.)   Thus, the dates on which tenants moved into and out of units during the proposed class period will determine the amount of information contained on the premises inventory.

Regardless of the version of the form used, the court finds that the premises inventories contain information that is relevant to (i.e., could bear on) plaintiffs' assertions that defendants failed to maintain Cross-Lines in a safe and sanitary manner.   If, for example, a premises inventory did not include the tenant's affirmation that the unit presented was "decent, safe, and sanitary," such information could certainly lead plaintiffs to pursue the tenant as a potential witness who could support their claims.   And if a premises inventory identified the presence of a water

---

[4] Most of the produced premises inventories include a notation in the footer indicating the dates of creation and revision.

leak or pests, such information would directly bear on plaintiffs' allegations.   Thus, the premises inventories are of some relevance.

As noted above, however, the court must weigh the relevance of the documents against the burden defendants would likely incur to produce them.   To support their objection, defendants must demonstrate that the time or expense involved in responding to the discovery request is unduly burdensome.   *See Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2018 WL 3055869, at *3 (D. Kan. June 20, 2018) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).   To that end, defendants have presented the declaration of Linda Kemp, Young Management Corporation's Director of Compliance.   (ECF 46-5.)   Kemp states that, since 2015, there have been 243 move-ins and that a "normal tenant move-in file has over 115 pages of documents."   (*Id.* at 3-4.)   She further attests that the "tenant-file for an individual who has resided at the property for three years consists of about 400 pages of material" (*id.* at 4), but Kemp does not state how many tenants fall into the three-years-plus category.   Kemp estimates that it would take Young Management Corporation staff 160 hours "to find, sort, gather, redact and produce the inventories."   (*Id.* at 5.)

It is unclear how Kemp reached her total-hour estimate, but dividing 160 hours by 243 files to review (which, again, is a fuzzy number given that plaintiffs have set the relevant time frame as beginning in February 2017, not 2015), amounts to 39.5 minutes per file.   The court's review of the premises inventories in the record indicates that no redaction of inventories will be necessary— the only personal information therein is the tenant's name and apartment unit, and defendants have not attempted to meet their burden of demonstrating good cause for redaction under the standards the court sets out below.   *See infra* pgs. 13-15 & n.8.   The court questions the likelihood that it will take a staff member 39.5 minutes on average to find the relevant file, page through the same

to find the inventory, and copy the inventory.   Nonetheless, even if the court were to decrease Kemp's estimate by half, an 80-hour response time is significantly burdensome considering the fairly minimal information provided in the completed forms.   Therefore, the court turns to the sampling suggestions proposed by the parties to balance the likely benefit to plaintiffs with its potential burden to defendants.

Plaintiffs propose a sample of "25% of all units, randomly selected, with at least five units from each floor of each building."   (ECF 45, at 7-8.)   Defendants propose a sample of "10% of the units," made up of the units occupied by "the 23 individuals identified in Plaintiffs' Initial Disclosures as individuals represented by Plaintiffs' counsel."   (ECF 46, at 7-8.)   Both proposals are flawed.   Cross-Lines has units on 14 floors, so plaintiffs' suggestion of five units per floor (i.e., 70 units) would result in a sample size of 34%, not 25%.   And defendants' suggestion that they simply produce the premises inventories completed by plaintiffs or potential plaintiffs can hardly be considered a "sample."   As plaintiffs note, defendants' proposal "would omit entire floors . . . risking invalidation of the sampling methodology."   (ECF 48, at 3.)

The court will therefore adopt a different approach that should approximate 25% of the units.   Defendants must produce premises inventories from at least three units per floor (i.e., 42 units) to include those occupied by the 23 individuals that plaintiff's initial disclosures identify as individuals represented by plaintiff's counsel.   Under this scenario, defendants may need to produce premises inventories for more than three units per floor if several of the 23 individuals reside on a particular floor.   But, to the extent that less than three of the 23 individuals reside on a particular floor, defendants must select additional units on that particular floor so that the total is at least three per floor.   In addition, defendants must disclose to plaintiffs how they selected the additional units beyond those of the 23 individuals—whether they used particular criteria, drew

10

them out of a hat, etc.   This approach should generate a representative sample of all Cross-Lines

units without omitting certain areas or floors.   Moreover, the size of the sample should reduce the

burden on defendants to around 40 hours or less, which seems more proportional to the needs of

the case.   Thus, the court limits Document Request No. 34 to seeking the sample set out here and

compels defendants to produce the same.[5]

## IV.     RENT ROLLS ARE RELEVANT AND MAY NOT BE REDACTED

Plaintiffs third request is that the court compel defendants to respond to Document Request

No. 45, which seeks copies of "rent rolls . . . including break-downs of all rents paid by HUD and

all rents paid by the putative class members."   (ECF 45-1, at 12; 45-2, at 12.)   Defendants object

on relevance grounds to providing "information relating to 'putative class members' . . . since this

is not a certified class."[6]   (ECF 45-3, at 13; 45-4, at 13.)   But defendants argue that, should the

court compel production of rent rolls, they "should be permitted to redact portions that contain

names and other personal information for any putative class member."   (ECF 46, at 10.)

As noted above, Rule 26(b)(1) contemplates broad discovery of "relevant" information,

i.e., "any matter that bears on, or that reasonably could lead to other matter that could bear on, any

---

[5] Plaintiffs' reply suggests that defendants could reduce their burden of responding to Document Request No. 34 by making the responsive move-in files "available for inspection and copying, shifting the burden to Plaintiff to extract the premises inventories," as permitted by Federal Rule of Civil Procedure 34(a)(1).   (ECF 48, at 3.)   Defendants' position on this suggestion is unknown.   Defendants are welcome to meet their discovery obligation via this route, rather than by the sampling ordered herein, but only if defendants choose to do so.   The court is not ordering them to make the files available for inspection.

[6] Defendants' original discovery responses also lodged a relevance objection as to rent rolls for the named plaintiffs (ECF 45-3, at 13; 45-4, at 13), but they waived that objection by not re-asserting that argument in response to the motion to compel.   *See Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) ("[O]bjections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned."); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404, 2011 WL 13233153, at *2 (D. Kan. Sept. 28, 2011) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." (internal quotations and citation omitted)).

issue that is or may be in the case."   *Oppenheimer Fund*, 437 U.S. at 351.   Plaintiffs assert that the rent rolls for the putative class are relevant to their damage claims.   The court agrees. Plaintiffs' complaint asserts that plaintiffs and a proposed class of plaintiffs are entitled to recover both (1) the rents they paid defendants and (2) the monthly voucher payments the U.S. Department of Housing and Urban Development ("HUD") paid defendants.   (ECF 1 ¶¶ 222, 224, 240-41, 260-61, 274-75, 292-93, 305-06.)   The rent rolls bear on these issues.   Although a class has not yet been certified (plaintiffs' motion for class certification is due February 24, 2023), the court has not limited the current discovery phase to only the claims of the three named plaintiffs, nor has it bifurcated merits and damages discovery.   (*See* ECF 23.)

Moreover, plaintiffs explain that the rent rolls of *putative class members* are relevant to defendants' defense against claims of the *named plaintiffs*.   Specifically, defendants assert that they took reasonable habitability measures because they operated Cross-Lines on a dollar-in-dollar-out basis.   Plaintiffs contend that the rent rolls would identify "how much Defendants *actually* received in contrast to what Defendants' spent."   (ECF 45, at 8 (emphasis in original).) Defendants do not dispute this relevance argument, but assert that the information in the rent rolls is "duplicative" of "rent revenue" information that defendants already produced in financial statements.   (ECF 46, at 9.)   Although defendants do not so say, perhaps they are asking the court to limit this discovery pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)'s mandate that courts limit "unreasonably cumulative or duplicative" discovery.   But defendants have not attempted to actually demonstrate duplicity—they have not submitted a sample rent roll or copies

of produced financial statements for the court's comparison.   Thus, there is no support in the record for defendants' assertion of duplicity.[7]

Finally, defendants argue that if the court orders the rent rolls produced, "Defendants should be permitted to redact portions that contain names and other personal information for any putative class members."   (ECF 46, at 10.)   Defendants state that they are concerned that plaintiffs' counsel will use the rent rolls to identify and solicit potential class members.   (*Id.* at 9.)   But a party ordinarily may not redact information from documents it produces in litigation simply because the redacted information is irrelevant or non-responsive.   *See Fish v. Kobach*, No. 16-2105-JAR-JPO, 2017 WL 1373882, at *7 (D. Kan. Apr. 17, 2017); *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2010 WL 4792388, at *5-*6 (D. Kan. Nov. 17, 2010).   Federal Rule of Civil Procedure 34 requires a party to produce or permit inspection of responsive *documents*, not just relevant information contained in those documents.   *HR Tech.*, 2010 WL 4792388, at *5.   Permitting indiscriminate redactions inserts "'another step in the process,' [that] would invite additional discovery disputes and undermine Fed. R. Civ. P. 1's directive to construe the Rules to advance the just, speedy, and inexpensive determination of cases."   *Fish*, 2017 WL 1373882, at *7 (quoting *HR Tech.*, 2010 WL 4792388, at *5).   Further, redactions are "both unnecessary and potentially disruptive to the orderly resolution of the case" because parties are

---

[7] Defendants' response to the motion to compel included a passing reference (in a single sentence) to the "burden on defendants of producing the rent rolls."   (ECF 46, at 9.)   To the extent defendants are relying on an undue-burden objection, it is overruled.   First, defendants waived any such objection by not asserting it in their original discovery responses.   *See Allen v. Mill- Tel, Inc.*, 283 F.R.D. 632, 633 (D. Kan. 2012) ("[T]the court will deem waived any objections not asserted in the initial response to a discovery request but raised in a response to a motion to compel.").   And second, defendants did not offer any specific support to demonstrate the production burden.

13

not ordinarily harmed by producing irrelevant or sensitive information that is already subject to a protective order restricting its dissemination and use.  *HR Tech.*, 2010 WL 4792388, at *5.

However, Federal Rule of Civil Procedure 26(c)(1) permits a court to issue a protective order authorizing redactions, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Ritchie v. Wal-Mart Stores East., L.P.*, No. 19-4067-SAC-ADM, 2020 WL 5369392, at *1 (D. Kan. Sept. 8, 2020) (quoting FED. R. CIV. P. 26(c)).  A party seeking to redact "information on otherwise discoverable documents, has the burden to show why its redactions are proper."  *McNabb v. City of Overland Park*, No. 12-2331-CM-TJJ, 2014 WL 1152958, at *4 (D. Kan. Mar. 21, 2014).  For example, a party may demonstrate good cause to support narrowly tailored redactions of limited information not relevant to the issues in the case by establishing specific, significant harm that would result from disclosure. *See, e.g.*, *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482, at *10-11 (D. Kan. Sept. 2, 2020) (granting protective order where the producing party submitted detailed declarations to support the redactions).

Here, defendants have not demonstrated sufficient potential harm to justify redacting the personal information of putative class members in relevant documents.[8]  Defendants express a vague "concern of solicitation" of current and former Cross-Lines residents by plaintiffs' counsel. But plaintiffs' counsel is obviously governed by attorney ethics rules.   And defendants have not provided any explanation as to why those solicitation rules are insufficient to warrant deviating from the default rule that a party generally may not redact information in otherwise discoverable documents.   Therefore, defendants have not met their burden of establishing a specific, significant

---

[8] To the extent defendants similarly seek to redact the premises inventories the court ordered produced (*see* ECF 46, at 8 (noting defendants have "suggested" such redaction in the past)), the request is denied under the same analysis set out below.

harm that would befall them or nonparties if they produced unredacted rent rolls under the protective order governing this case. (*See* ECF 34.) In short, defendants have not shown good cause for a protective order authorizing the redactions they seek. Defendants are therefore ordered to produce the rent rolls without redactions.

## V. DEFENDANTS HAVE NOT SUPPORTED THEIR "CONFIDENTIAL" DESIGNATION ON INSURANCE POLICIES

Finally, plaintiffs challenge defendants' "confidential" designation on previously produced insurance policies and on any to-be-produced reservation-of-rights letters. (ECF 45, at 8-10.) Because the court denied the portion of plaintiffs' motion seeking production of reservation-of-rights letters, the court limits its analysis here to whether defendants' insurance policies should be protected from public disclosure.

The protective order in this case is a "blanket" order, "which requires counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." *Murray v. ManorCare of Topeka KS, LLC,* No. 19-2148-HLT-KGG, 2021 WL 1027697, at *2 (D. Kan. Mar. 17, 2021) (quotation and citation omitted). Under the order's specific terms, a producing party may designate as "confidential" information that "has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use . . . could potentially cause harm to the interests of disclosing party or nonparties." (ECF 34, at 3.) The parties further agreed to limit their designation of "confidential information" to "[p]ersonal information regarding tenants; [p]ersonal information regarding employees; [m]edical information and medical records; and [c]onfidential business information." (*Id.*) Once designated as confidential, "information is protected under the order unless challenged by the opposing party." *Murray,* 2021 WL 1027697, at *2. If challenged, the party asserting

confidentiality bears the "burden of proving the necessity of a confidentiality designation."   (ECF 34, at 8.)   *See also Ad Astra Recovery Servs., Inc.*, 2020 WL 5057482, at *9 ("When a party files a motion challenging a confidentiality designation, the designating party still has the burden to prove the necessity of the designation.").

Defendants assert that their insurance policies are properly designated as confidential because they contain "confidential business information" and their disclosure could potentially harm defendants or defendants' (nonparty) insurers.   (ECF 46, at 4.)   But defendants offer only conclusory statements in support of this argument.   Defendants do not state what "confidential business information" is contained in the policies, such as deviations from otherwise standard coverage language.   They state only that the policies contain "coverage" information for Cross-Lines and Young Management Corporation's other properties (*id.* at 5), but do not suggest why such coverage information qualifies as "confidential business information."   *See Dieterich v. Stellar Recovery, Inc.*, No. 12-cv-02464-WYD-BNB, 2013 WL 627166, at *3 (D. Colo. Feb. 20, 2013) ("The defendant has acknowledged that its insurance policies are not confidential."). Plaintiffs note that they have agreed that defendants may redact premium information (ECF 45, at 10), so defendants' concerns have been addressed to the extent that is the confidential business information defendants seek to protect.

Next, defendants make only broad statements of potential "harm" that they could suffer from disclosing the insurance policies.[9]   They assert that "maintaining the confidential designation is important to prevent the potential harm of leaking the information to the press or other tenants."   (ECF 46, at 4.)   They note that there have been news articles discussing this

---

[9] Defendants' arguments concerning harm from public disclosure of defendants' "communications" with their insurers are more concrete, but, as noted above, the issue here is whether the policies themselves may be disclosed.

lawsuit and that plaintiffs and their counsel are "soliciting" Cross-Lines residents.   (*Id.* at 4-5.)
Although defendants contend that de-designating the policies would cause such press and
solicitation to continue, they never explain how they could be harmed by any future press or
solicitations.   Likewise, defendants argue that information "of insurance coverage for [Young
Management Corporation's] properties that are not part of this case could cause harm to
Defendants" (*id.* at 5), but they do not identify what that harm could be.   Finally, defendants state
that their insurers could be harmed by "having individuals contact the carriers and their personnel
directly."   (*Id.*)   Again, however, they do not explain this opaque statement or submit anything
that would support it.

In sum, it is defendants' burden to demonstrate the necessity of maintaining the
confidential designation on the insurance policies, and they have not met this burden.   Thus, this
portion of plaintiffs' motion is granted.   Defendants are directed to reproduce the documents with
the confidential designation removed.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Compel Discovery and
Remove Confidential Designations (ECF 45) is granted in part and denied in part as set forth
above.

**IT IS SO ORDERED.**

Dated September 20, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

17