IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD COE, LINDA SMITH,
and EDWARD YOST,
Individually and on behalf of all
others similarly situated,

　　　　*Plaintiff,*

vs.

Case No. 22-2047-EFM

CROSS-LINES RETIREMENT
CENTER, INC., and YOUNG
MANAGEMENT CORP.,

　　　　*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiffs Donald Coe, Linda Smith, and Edward Yost are Defendants' tenants who have asserted nine separate claims all stemming from Defendants' alleged neglect of their apartment complex. Before the Court is Defendants Cross-Lines Retirement Center, Inc. ("Cross-Lines")'s and Young Management Corp. ("Young")'s Motion to Dismiss Counts II and VII—violation of the ADA and private nuisance, respectively—of Plaintiffs' lawsuit. Based on the reasons set forth below, the Court grants Defendants' Motion.

### I.  Factual and Procedural Background[1]

Each of the named Plaintiffs, two septuagenarians and one octogenarian, rent residential apartments in apartment complexes owned by Cross-Lines and operated by Young, Cross-Lines' property manager. Cross-Lines is a nonprofit corporation, with its mission statement having as its goal the provision of rental housing to elderly families and individuals. Because of its nonprofit status, Cross-Lines receives federal subsidies to purportedly allow it to offer lower rent. Even so, the facts in the Complaint make clear that it just provides residential apartments for rent without further services characteristic of a nursing home or group home. Indeed, many of Plaintiffs' claims rely on the Plaintiffs' allegations regarding the apartments' residential nature.

The facts underlying Plaintiffs' claims are fairly straightforward. As colorfully stated in Plaintiffs' Complaint, the apartments' neglected condition leave "elderly and disabled tenants captive to bed-bug infestations, decaying rodent bodies,[2] flooding, leaking, and mold." In total, Plaintiffs have filed nine separate claims to recover for Defendants' alleged neglect and the allegedly horrid living conditions they suffer: (1) injunctive relief; (2) violations of the Americans with Disabilities Act ("ADA"); (3) violations of the Fair Housing Act ("FHA"); (4) violation of the implied warranty of habitability; (5) breach of contract and statutory duty; (6) failure to provide essential services; (7) private nuisance; (8) negligence; and (9) violation of the Kansas Consumer Protection Act. Plaintiffs also seek to have their case class certified, with the rest of the apartment tenants comprising the class members. Defendants have filed this Motion to Dismiss Plaintiffs'

---

[1] The facts are taken from the allegations within Plaintiffs' Complaint and are considered true for the purposes of this order.

[2] The photographs included in the Complaint, while effective in conveying Plaintiffs' point, are not particularly pleasant.

claims for violation of the ADA and private nuisance. Arguing Plaintiffs fail to state these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III. Analysis

**A.   The ADA does not apply to the residential apartment complex at issue in this case.**

The first issue before the Court is whether the ADA covers the type of residential apartment complex at issue here. Defendants contend that Plaintiffs' ADA claim is unavailable to them because the building at issue is merely a residential apartment complex, covered by the FHA instead of the ADA. For their part, Plaintiffs navigate the statutory definitions by arguing that Defendants operate a "senior citizen center" which serves as a "public accommodation," bringing it within the terms of the ADA. Based on a plain reading of the ADA, its legislative history, and persuasive analysis from other district courts, the Court agrees with Defendants.

Determining whether the ADA applies to apartment complexes requires statutory interpretation. When interpreting statutes, courts must first and foremost give the unambiguous statutory language its plain meaning.[10] "The plain meaning of a statute is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[11]

As ably pointed out by this Court's sister court in Utah, "[f]acially, the [ADA] does not include a private residence, such as a residential home or apartment."[12] Instead, the ADA regulates "public accommodations" to ensure accessibility for disabled persons.[13] Relevant to this case, a public accommodation must affect commerce and be "a day care center, senior citizen

---

[10] *United States v. Broadway*, 1 F.4th 1206, 1211 (10th Cir. 2021).

[11] *Id.* (further citation and quotations omitted).

[12] *Phibbs v. Am. Prop. Mgmt.*, 2008 WL 746977, at *3 (D. Utah 2008).

[13] *See* 42 U.S.C. § 12182.

center, homeless shelter, food bank, adoption agency, or other social service center establishment."[14]

Contrary to Plaintiffs' contention, § 12181(7)(K) does not create a backdoor exception by which typical apartment complexes may be brought under the ADA's provisions. The plain meaning of "senior citizen center" is not an apartment complex catering to the elderly but rather a place hosting events, activities, and services for senior citizens.[15] Furthermore, "senior citizen center" appears in the context of § 12181(7)(K) between "day care center" and "homeless shelter." It is hard to imagine that either of these could ever be construed as referring to a residential facility. Indeed, the legislative history of the ADA clearly states that "[o]nly nonresidential facilities are covered by this title."[16] As an example, the legislature stated if "a large hotel [] has a residential apartment wing, the residential wing would be covered under the Fair Housing Act, rather than by this title. The nonresidential accommodations in the rest of the hotel would be covered by this title."[17]

Plaintiffs argue briefly that the apartment complex here may also qualify as a public accommodation as a "social service center establishment." 28 C.F.R. § 36.406(d) defines social service center establishments as "[g]roup homes, halfway houses, shelters, or similar social service

---

[14] *Id.* at § 12181(7)(K).

[15] *See J.H. by & through Holman v. Just for Kids, Inc.*, 248 F. Supp. 3d 1210, 1222 (D. Utah 2017) ("[A]ll of the specific examples preceding the general term 'social service center establishment' in § 12181(7)(K) ('a day care center, senior citizen center, homeless shelter, food bank, adoption agency') are plainly fixed structures, buildings, or groupings of facilities that provide social services. The court notes that these specific statutory examples align with examples provided to explain the common, ordinary meaning of the term 'center' cited above, including 'medical center,' 'shopping center,' or 'amusement center.' ") (citations omitted); *see also Center*, *American Heritage Dictionary* (5th ed. 2022) ("A place where a particular activity or service is concentrated: *a medical center*.") (emphasis in original).

[16] H.R. Rep. 101-485 pt. 2, at 100 (1990).

[17] *Id.* (citation omitted).

center establishments that provide either temporary sleeping accommodations or residential dwelling units." From this definition, an apartment complex, even one with clientele purposely comprised of senior citizens, clearly is not in the same category as a group home or halfway house. After all, "[w]hether a facility is a public accommodation under the ADA turns on whether the facility is open indiscriminately to other members of the general public."[18] There are no allegations that is the case here. Rather, Plaintiffs are renters leasing private residential apartments. Cross-Lines status as a non-profit organization does not change that. Therefore, the apartment complex here is not a social service center establishment.

Lastly, Plaintiffs have failed to point to any case where an apartment complex like the one at issue here was considered to come under the ADA's provisions. In contrast, multiple courts have found that the ADA does not apply to private residences, including apartment complexes.[19] Where the facility at issue does nothing more than lease residential apartments to senior citizens, the Court has no hesitation in joining the judicial majority to hold the ADA does not apply.

---

[18] *Westjohn v. Seldin Co.*, 2022 WL 1785453, at *5 n. 6 (D. Neb. 2022) (further citations and quotations omitted).

[19] *See Regents of Mercersburg Coll. V. Republic Franklin Ins. Co*, 458 F.3d 159, 165–66 (3rd Cir. 2006) (holding that the ADA does not apply to college dormitories, as these more closely resemble permanent residences than "transient lodging" covered by the ADA); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (stating that residential apartments and condominiums do not constitute public accommodations within the meaning of the ADA); *Collins v. PRG Real Est.*, 2018 WL 2166214, at *2 (6th Cir. 2018) (same); *Phibbs*, 2008 WL 746977, at *3 ("[A] residential apartment complex and its assigned parking is not a place of public accommodation as contemplated by the act. Accordingly, because the apartments at issue in this case are not public accommodations Defendants are not subject to 42 U.S.C. § 12182."); *Barwick v. Broadway Lofts, LLC*, 2022 WL 4295336, at *4 (D. Colo. 2022), *report and recommendation adopted*, 2022 WL 4295334 (D. Colo. 2022) ("A residential apartment complex is not a place of public accommodation.") (further citation and quotations omitted).

**B.      The Kansas Supreme Court would likely agree with most courts holding that a private nuisance action is unavailable to tenants against their landlord.**

Defendants next move to dismiss Plaintiffs' private nuisance claim, arguing that nuisance actions are unavailable to tenants against their landlord.[20]  While Plaintiffs point to Kansas caselaw showing that tenants generally may bring nuisance actions, one thing is clear—this is a matter of first impression for courts applying Kansas law.

Private nuisance is a state law claim[21] before this Court through diversity jurisdiction under 28 U.S.C. § 1332.  As a federal court sitting in diversity, this Court "must follow the latest holdings of the state's highest court."[22]  If no decision by the state's highest court exists on an issue, then federal courts must try to predict how that court would rule, relying on "state appellate court opinions, decisions from other jurisdictions, statutes, and treatises."[23]

In general, Kansas caselaw makes clear that tenants are fully capable of bringing private nuisance actions against third parties.[24]  No Kansas case has addressed whether a tenant may bring a private nuisance action against his or her landlord.  Therefore, the Court must look outside of Kansas caselaw to predict what the Kansas Supreme Court would decide regarding this issue.

---

[20] Although their Complaint states a claim for "Nuisance," Plaintiffs clarified in their Response that they are asserting only a private nuisance action against Defendants.

[21] *See, e.g.*, *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1248 (10th Cir. 2022).

[22] *United States v. Turley*, 878 F.3d 953 (10th Cir. 2017).

[23] *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (discussing federal court interpretation of a state statute specifically).

[24] *See, e.g.*, *Culwell v. Abbott Const. Co., Inc.*, 211 Kan. 359, 506 P.2d 1191, 1195 (1973) ("In *Klassen v. Creamery Ass'n*, 160 Kan. 697, 165 P.2d 60 [(1946)], a private nuisance case, we recognized that the early common law regarded a nuisance only as an injury to some interest in land and that a legal remedy was given only to a person having some interest in land. In *Klassen*, the right to recover damages for injury to the use and occupation of leased land was afforded to a tenant who suffered loss as a result of the pollution of his water by waste products from a creamery.").

Although there is little specific guidance on this issue, the vast majority of courts have held "that an action for private nuisance is designed to protect *neighboring landowners* from conflicting uses of property."[25]  For example, in *Philadelphia Electric Co. v. Hercules, Inc.*,[26] the Third Circuit addressed a private nuisance action under Pennsylvania law brought by a purchaser of real estate against the prior owner of that property.[27]  Without a direct Pennsylvania Supreme Court case on point, the Third Circuit had to predict whether a private nuisance action under the circumstances was cognizable under Pennsylvnia law.[28]  Ultimately, the Third Circuit predicted that the Pennsylvania Supreme Court would not allow such an action.[29]

First, the Third Circuit acknowledged the "historical role of private nuisance law as a means of efficiently resolving conflicts between *neighboring*, contemporaneous land uses."[30] With that goal, nuisance actions operate like zoning regulations in that "the goal of nuisance law is to achieve efficient and equitable solutions to problems created by *discordant* land uses."[31] Private nuisance actions have never been intended to function "as an additional type of consumer

---

[25] *Moore v. Texaco, Inc.*, 244 F.3d 1229, 1232 (10th Cir. 2001) (emphasis added); *see also Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 626 (M.D. Pa. 1997) (applying Virginia law); *Lilly Indus., Inc. v. Health–Chem Corp.*, 974 F. Supp. 702, 706–08 (S.D. Ind. 1997) (applying Indiana law); *Cross Oil Co. v. Phillips Petroleum Co.*, 944 F. Supp. 787, 792–93 (E.D. Mo. 1996) (applying Missouri law); *Dartron Corp. v. Uniroyal Chem. Co.*, 893 F. Supp. 730, 741 (N.D. Ohio 1995) (applying Ohio law); *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 421–22 (E.D.N.Y. 1994) (applying New York law to hold private nuisance action unavailable to tenant against landlord); *Mayor & Council of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1057–58 (D.N.J. 1993) (applying New Jersey law).  *But see Mangini v. Aerojet–Gen. Corp.*, 281 Cal. Rptr. 827, 833 (Cal. Ct. App. 1991) (allowing private nuisance suit against subsequent landowner under California statute governing nuisance); *Jobe v. Chelsea Hotel Owner LLC*, 198 A.D.3d 440, 440 (N.Y. App. Div. 2021) (allowing private nuisance action by tenant against landlord under New York state law); *Gesswin v. Beckwith*, 397 A.2d 121, 122 (Conn. Super. Ct. 1978) (same under Connecticut law).

[26] 762 F.2d 303 (3d Cir. 1985).

[27] *Id.* at 307–308.

[28] *Id.* at 313.

[29] *Id.* at 314.

[30] *Id.* (emphasis is original).

[31] *Id.* (emphasis in original).

protection for purchasers of realty."[32]  This is because "[n]eighbors, unlike the purchasers of the land upon which a nuisance exists, have no opportunity to protect themselves through inspection and negotiation."[33]  As an example, the Third Circuit discussed the situation where a landowner might sell real estate at a steep discount due to hazards or defects.[34]  If a private nuisance action were available to the purchaser, landowners would open themselves up to "unbargained-for liability to remote vendees."[35]  Based on this reasoning, the Third Circuit held that the plaintiff did not have a private nuisance action against the seller of the land.[36]

Since *Philadelphia Electric* was decided, numerous courts have adopted the Third Circuit's reasoning to prohibit plaintiffs from bringing "a private nuisance that originated on [their] own property."[37]  Even the Tenth Circuit, applying *Philadelphia Electric* to private nuisance actions under Oklahoma law, has held that private nuisance actions are unavailable to successor landowners because "an action for private nuisance is designed to protect neighboring landowners

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 314–15.

[35] *Id.* at 315.

[36] *Id.*

[37] *E.g.*, *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 409 (N.D.N.Y. 2013) (applying West Virginia law); *see also Am. Premier Underwriters, Inc. v. Gen. Elec. Co.*, 2008 WL 11351545, at *16 (S.D. Ohio 2008) ("Here, APU seeks redress for an alleged nuisance on its own property. APU does not cite any authority for such a claim. Consequently, GE's motion to dismiss is well-taken with respect to Count XIII of APU's complaint.").  *But see Albuquerque Bernalillo Cnty. Water Util. Auth. v. CalMat Co.*, 2008 WL 11322216, at *4 (D.N.M. 2008) (recognizing exception in Restatement that allows a private nuisance suit by landlord against tenant where tenant "has created a permanent or continuing interference with the usability of the land during his tenancy" thus diminishing remaining value of property).

from conflicting uses of property."[38]  The few cases holding to the contrary are generally without analysis of this issue and are not persuasive.[39]

The Court believes that the Kansas Supreme Court would likely adopt the reasoning of most courts in determining that an action for private nuisance is unavailable to tenants against their landlords.  In arriving at this conclusion, the Court agrees with the Third and Tenth Circuits' reasoning that nuisance law historically is meant to regulate conflicts between neighboring or at least separate land uses, not issues originating on one's own property.  Plaintiffs, as tenants, are not otherwise powerless against Defendants as a landowner would be against a neighbor.  Negotiation, withholding rent, and suing under any number of recognized theories available to tenants against landlords—as evidenced by the seven other legally cognizable counts which are moving forward in this case—are perfectly available to them.  Adding private nuisance to the list of available actions would be needlessly cumulative while endangering future lessors with liability for purposely leasing cheap premises which openly come with defects.  In the absence of any contrary caselaw cited by Plaintiffs, the Court holds that under Kansas law, a private nuisance is unavailable to them as tenants against their landlord for issues originating on their own property.

---

[38] *See Moore*, 244 F.3d at 1232.

[39] *See Mangini*, 281 Cal. Rptr. at 833 (characterizing California statute as unique); *Jobe*, 198 A.D.3d at 440 (N.Y. App. Div. 2021) (failing to perform any analysis regarding the availability of private nuisance actions originating on the land leased by tenant); *Gesswin*, 397 A.2d at 122 (decided without addressing issues analyzed by *Philadelphia Electric* and likely overruled by *Carroll v. Absolute Tank Removal, LLC*, 834 A.2d 823, 824 (Conn. Super. Ct. 2003) (relying on *Philadelphia Electric* to hold "because the third count fails to allege that the injury to the plaintiff's property originated outside the land affected, it does not state a cause of action for common law nuisance.")).

**IT IS THEREFORE ORDERED** that Defendants Motion to dismiss Counts II and VII (Doc. 9) is **GRANTED.**

**IT IS SO ORDERED.**

Counts II and VII are dismissed

Dated this 9th day of December, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE