## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DONALD COE, LINDA SMITH,
and EDWARD YOST,
Individually and on behalf of all
others similarly situated,

      *Plaintiffs,*

vs.                                                         Case No. 22-2047-EFM

CROSS-LINES RETIREMENT
CENTER, INC., and YOUNG
MANAGEMENT CORP.,

      *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Donald Coe, Linda Smith, and Edward Yost Motion for

Class Certification (Doc. 148). The named Plaintiffs seek class certification of six issues in their

ongoing lawsuit against Defendants Cross-Lines Retirement Center, Inc. ("Cross-Lines") and

Young Management Corp. ("Young"). The lawsuit arises out of the allegedly rampant bed bug

infestations prevailing at Cross-Lines' apartment complexes. Because Plaintiffs have met the

requirements of Fed. R. Civ. Proc. 23 with regard to five of the six proposed issues, the Court

grants Plaintiffs' Motion in part and denies it in part.

## I.      Factual and Procedural Background

Each of the named Plaintiffs, two septuagenarians and one octogenarian, rent residential apartments in apartment complexes owned by Cross-Lines and operated by Young, Cross-Lines' property manager.  Cross-Lines is a nonprofit corporation, having as its goal the provision of rental housing to elderly families and individuals.  Because of its nonprofit status, Cross-Lines receives federal subsidies to purportedly allow it to offer lower rent.

The facts underlying Plaintiffs' claims are fairly straightforward.  As colorfully stated in Plaintiffs' Complaint, the apartments' neglected condition leave "elderly and disabled tenants captive to bed-bug infestations, decaying rodent bodies, flooding, leaking, and mold."  After Defendants successfully moved to dismiss two of Plaintiffs' claims, seven remain: (1) injunctive relief; (2) violations of the Fair Housing Act ("FHA"); (3) violation of the implied warranty of habitability; (4) breach of contract and statutory duty; (5) failure to provide essential services; (6) negligence; and (7) violation of the Kansas Consumer Protection Act.

The present Motion focuses on the bed bug infestation.  Since 2016, 90% or more of the apartment units at Cross-Lines have had documented bed bug activity, with nearly half of those infested units requiring six or more treatments.  Plaintiffs rely on these numerous and unending infestations for each of their remaining claims. In their present Motion, Plaintiffs seek certification of an issue class for the following proposed issues:

1.      Has the infestation of bed bugs been so pervasive during the class period that every tenant was affected?

2.      Did Defendants breach their standard of care by not requiring, and enforcing, the pest control companies to perform surrounding-unit inspections whenever a unit is found to have bed bugs?

3.      Did Defendants breach their standard of care by refusing, or failing, to perform a full-building inspection of all units (Phase I and Phase II) at the same time?

4.      Does the presence of bed bugs in an apartment make that unit unsafe, unsanitary, and/or unfit for living in?

5.      Can an apartment which has bed bugs have an above-zero fair market value?

6.      Are extermination services "essential" for an apartment unit in a multi-family housing structure when an adjacent unit has live bed bug activity? If yes, what services are "essential" (i.e., inspection, treatment, etc.)?

## II.      Legal Standard

Fed R. Civ. Proc. 23 governs the certification of class actions.  "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[1] While this question necessarily involves examining the facts and legal issues, courts must refrain from evaluating the strength of the plaintiffs' case.[2]  The burden is on the plaintiffs to make a prima facie case that the putative class meets Rule 23's requirements.[3]  Taking the "substantive, non-conclusory allegations of the complaint as true,"[4] courts must conduct a "rigorous analysis" of a plaintiff's complaint to ensure it meets Rule 23's requirements.[5]  Even so, "[c]ourts should err

---

[1] *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th. Cir. 2010) (citations and internal quotations omitted).

[2] *See Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 612 (10th Cir. 2008).

[3] *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

[4] *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (further citations omitted).

[5] *Id.* at 1267.

on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[6]

As an initial step, Rule 23(a) requires the proposed representative plaintiffs to show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

If the plaintiffs meet Rule 23(a)'s requirements, they must then show that the class fits within one of the Rule 23(b) categories.  Where, as here, plaintiffs seek to certify a class under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In making this determination, courts should consider:

 (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.[7]

---

[6] *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) (further citations omitted).

[7] Fed. R. Civ. Proc. 23(b)(3).

Finally, courts may certify a class as to only certain issues under Rule 23(c)(4)(A) "if doing so would materially advance the litigation."[8]  If plaintiffs restrict their proposed class to a specific issue, then "the proposed class must satisfy the requirements of Rules 23(a) and (b) only with respect to that issue."[9]  "Certifying a class to determine defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification."[10]

### III.    Analysis

Plaintiffs seeks to certify a class for only six issues.  These are:

1.    Has the infestation of bed bugs been so pervasive during the class period that every tenant was affected?

2.    Did Defendants breach their standard of care by not requiring, and enforcing, the pest control companies to perform surrounding-unit inspections whenever a unit is found to have bed bugs?

3.    Did Defendants breach their standard of care by refusing, or failing, to perform a full-building inspection of all units (Phase I and Phase II) at the same time?

4.    Does the presence of bed bugs in an apartment make that unit unsafe, unsanitary, and/or unfit for living in?

5.    Can an apartment which has bed bugs have an above-zero fair market value?

6.    Are extermination services "essential" for an apartment unit in a multi-family housing structure when an adjacent unit has live bed bug activity? If yes, what services are "essential" (i.e., inspection, treatment, etc.)?

---

[8] *Riley v. PK Mgmt., LLC*, 2019 WL 6998757, at *3 (D. Kan. 2019) (citing *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006); *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 609 (D. Kan. 2012)).

[9] *Id.*

[10] *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 665 (D. Kan. 2013).

Because Plaintiffs restrict their proposed class to just these issues, the Court will examine Rule 23(a) and (b)(3)'s requirements solely as to these issues.

**A.     Plaintiffs have met Rule 23(a)'s requirements.**

First the Court must determine whether Plaintiffs can establish a prima facie case under Rule 23(a)'s four requirements.  It will examine each in turn.

*1.     Numerosity*

Plaintiffs propose the certified class to be "[a]ll persons who resided at Cross-Lines Retirement Center, 3030 and 3100 Powell Avenue, Kansas City, Kansas, on or after February 1, 2017 through the date the Class is certified" excluding:

> Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; counsel in this action and anyone employed by counsel in this action; any judge to whom this case is assigned; that judge(s)' significant other(s); and members of the judge or judges' staff(s).

Under Rule 23(a), the proposed class must be so "numerous that joinder of all members is impracticable."[11]   To show numerosity, plaintiffs "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[12] This Court has held that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action."[13] Even so, the numerosity inquiry looks beyond the sheer number of proposed class members.[14]  Courts should also examine "factors like the practical viability of individual suits in

---

[11] Fed. R. Civ. Proc. 23(a)(1); *see also Stambaugh v. Kansas Dept. of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993) (" 'Impracticable does not mean impossible.' ") (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

[12] *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 504 (D. Kan. 2015) (further citations and quotations omitted).

[13] *Ogden v. Figgins*, 315 F.R.D. 670, 673 (D. Kan. 2016) (further citation and quotations omitted).

[14] *See Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995).

terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members."[15]  For example, classes with a "fluid nature" that "makes identifying class members difficult, if not impossible" has been held to favor a finding a numerosity.[16]

Here, Plaintiffs have sufficiently demonstrated that joinder of all class members is impracticable.  Although Plaintiffs do not identify an exact number of class members, they note that Cross-Lines has 208 units and the class period spans over six years.  There has been at least some tenant turnover during that period, and many of those units are inhabited by couples. Therefore, a class size of at least several hundred members is a reasonable estimate in this case.

Various factors beyond the mere size of the proposed class favor finding that joinder of all class members is impracticable.  For example, Plaintiffs seek injunctive relief as a part of their requested remedies, a factor which this Court has found to favor finding numerosity before. Similarly, the turnover of tenants at Cross-Lines makes it difficult to ascertain the location and distribution of all class members.  With these factors in mind—and considering the reasonably estimated size of the proposed class—the Court finds that Plaintiffs have shown numerosity under Rule 23(a)(1).

### 2. *Commonality*

To establish commonality of issues, plaintiffs must show that a "common contention [is] of such a nature that it is capable of classwide resolution."[17]  In other words, "determination of its

---

[15] *Id.*

[16] *See Ogden*, 315 F.R.D. at 673 (holding that "ever-changing nature of [class] populations" favored a finding of numerosity).

[17] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (further citation and quotations omitted).

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[18]   As such, the emphasis of Rule 23's commonality requirements is not the existence of "common *questions*" but rather whether those commons question would result in "common *answers* apt to drive the resolution of the litigation."[19]   The inquiry here  is not "whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is even a single common question."[20]

In arguing that none of Plaintiffs' proposed class issues meet the commonality requirement, Defendants throw a barrage of "individual questions" into the air, hoping to obscure the narrow and straightforward questions presented.  But Plaintiffs' proposed class issues, with one exception are exactly the generally applicable questions which could provide common answers that would materially advance the resolution of the present case.

The second and third issues speak directly to Defendants' liability, and their answers would materially advance this litigation by either establishing or removing Defendants' fault.  The fourth and fifth issues would provide simple "yes or no" answers which would provide class members with a starting point from which to determine damages.  Finally, the sixth issue is a factual question central to further defining the standard of care for Defendants as property managers.  Because the answers to these common issues will advance the resolution of this case, the Court finds the Plaintiffs have met Rule 23(a)(2)'s commonality requirement.

The same cannot be true of Plaintiffs' first issue, which asks whether every tenant was affected by the bed bug infestation.  However, the fact that the proposed class shares five other

---

[18] *Id.* (further citation and quotations omitted).

[19] *Id.* (further citation and quotations omitted) (emphasis in original).

[20] Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

common questions does not preclude class certification in this case.  Rather, the question of whether this issue is, in itself, available for class certification will be discussed infra in this Court's analysis of Rule 23(b)(3).

    *3.*    *Typicality*

Under Rule 23(a)(3), plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  The test for this requirement looks past differing factual situations "so long as the claims of named plaintiffs and class members are based on the same legal or remedial theory."[21]  Thus, "[a] named plaintiff's interests and claims do not need to be identical to class members' interests and claims to satisfy typicality, but they must not be significantly antagonistic."[22]  While conclusory allegations of typicality are insufficient to meet Rule 23(a)(3)'s requirement, "[d]emonstrating typicality is not an onerous burden."[23]

Here, the named Plaintiffs seek to recover damages and obtain injunctive relief based on the prevalence of bed bug infestations within the Cross-Lines apartment units.  They have provided evidence that over 90% of Cross-Lines units had bed bug treatments within the last six years, with many of those units receiving multiple treatments and/or showing high levels of bed bug activity.  Although the extent to which class members have experienced injury from bed bug infestations will differ on an individual basis, all class members would rely on the same legal and remedial theories—specifically, the alleged causes of actions as well as the requested damages plus

---

[21] *In re Motor Fuel*, 292 F.R.D. at 670.

[22] *Florece v. Jose Pepper's Restaurants, LLC*, 2021 WL 5038773, at *4 (D. Kan. 2021) (citing *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991)); *see also Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 622 (D. Kan. 2008) ("The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.").

[23] *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996).

injunctive relief—to recover against Defendants.  Therefore, the Court finds that Plaintiffs have adequately shown typicality.

4.      *Adequacy*

Rule 23(a)'s final requirement inquires into whether the named plaintiffs "will fairly and adequately protect the interests of the class."[24]  In this inquiry, two question are significant.[25]  First, courts must examine whether conflicts of interest exist between the named plaintiffs and the other class members.[26]  Second, courts must examine the adequacy of the named plaintiffs and their counsel such that the class members can expect vigorous prosecution of the action.[27]  As this Court has previously stated:

> Minor conflicts between class members do not prevent certification.  Only a fundamental conflict about the specific issues in controversy will prevent a named plaintiff from representing the interests of the class adequately.  A fundamental conflict exists where some class members claim an injury resulting from conduct that benefited other class members.[28]

Aside from Plaintiff Donald Coe soliciting allegedly unwilling tenants to be a part of the lawsuit—which, according to Defendants "might be irrelevant"—Defendants do not point to any conflicts between the named Plaintiffs and other class members.  The Court cannot find any either, much less a fundamental conflict.  Therefore, Plaintiffs are adequate representatives under the first question.

---

[24] Fed. R. Civ. Proc. 23(a)(4).

[25] *See Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 506 (D. Kan. 2015).

[26] *Id.*

[27] *Id.*

[28] *Id.* (citations omitted).

Second, the Court finds that counsel in this case "is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."[29]   Indeed, the Court must presume as much in the absence of contrary evidence.[30]   Defendant has provided none, thus waiving any objection based on the proposed class counsel's adequacy.   Accordingly, the Court finds that the requirements of Rule 23(a)(4) have been met.

**B.     Plaintiffs have met Rule 23(b)(3)'s requirements.**

Defendants challenge Plaintiffs' proposed class certification under Rule 23(b)(3), claiming that Plaintiffs cannot show either predominance or superiority.   Naturally, Plaintiffs disagree.   The Court will review each issue in turn.

*1.      Predominance*

Under Rule 23(b)(3), the named plaintiffs must "show that common questions subject to generalized, classwide proof predominate over individual questions."[31]   This "requirement is related to, albeit 'more demanding than,' Rule 23(a)(2)'s commonality requirement."[32]   An extra wrinkle appears, however, when plaintiffs seek to certify a class only with respect to certain issues under Rule 23(c)(4).   Defendants spend the bulk of the argument contending that the Court cannot certify the proposed class because the issues presented for certification do not predominate over the case as a whole.

In conducting its analysis, the Court recognizes that the Tenth Circuit has not yet provided guidance on the interaction of Rule 23(c)(4) and Rule 23(b)(3).   However, the weight of authority

---

[29] *Zapata*, 167 F.R.D. at 161.

[30] *Id.*

[31] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

[32] *Naylor Farms*, 923 F.3d at 789 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

clearly supports allowing a class action on certain issues even when those issues do not predominate over the entire case.  In sum, the Second, Third, Fourth, Sixth, and Ninth Circuits have all adopted a "broad approach" by allowing class issue certification without requiring that those issues predominate over the case as a whole.[33]  Out of the other circuits, only the Fifth Circuit has employed a "narrow approach" to hold that the class issues themselves must predominate.[34]  And its holding "has not been adopted by any other circuit, and subsequent caselaw from within the Fifth Circuit itself indicates that any potency the narrow view once held there has dwindled."[35]

The Court believes the Tenth Circuit would hold with the majority of other circuits that certified class issues under Rule 23(c)(4) need not predominate over Plaintiffs' entire case.  Not only is this position supported by the clear weight of authority, but the broad approach also reconciles Rule 23(b)(3) and Rule 23(c)(4) without nullifying either.  As the Sixth Circuit convincingly explained, "[t]he broad approach retains [Rule 23(b)(3)'s] predominance factor, but instructs courts to engage in the predominance inquiry after identifying issues suitable for class treatment.  Accordingly, the broad view does not risk undermining the predominance requirement.  By contrast, the narrow view would virtually nullify Rule 23(c)(4)."[36]

---

[33] *In re Nassau County Strip Search Cases*, 461 F.3d at 226 (quoting *Valentino*, *infra* and holding that the plain language and structure of Rule 23 and the advisory committee comments support this result); *Russell v. Educ. Comm. for Foreign Med. Graduates*, 15 F.4th 259, 270 (3rd Cir. 2021); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439 (4th Cir. 2003); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 411–12 (6th Cir. 2018); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 559 (7th Cir. 2016), (allowing certification of class issues without addressing whether those issues predominate the action as a whole).

[34] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996).

[35] *Martin*, 896 F.3d at 412 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006)).

[36] *Id.* at 413.

Therefore, the question here becomes whether the common questions "*within each issue*" predominate over individualized question within the same.[37]  The Court finds that—for the most part—they do.  As noted above in the Court's commonality analysis, five of Plaintiffs' proposed issues are questions common to all class members.  Defendants have not identified any individual issues contained within the proposed issues.  Likewise, the Court cannot conceive of any, as the proposed issues are generally applicable and not susceptible to an individualized analysis.

Instead of disputing this fact, Defendants focus on individual issues—such as causation and damages—outside of the scope of the proposed issues.  Because the Court adopts the broad approach, Defendants' argument is unavailing and irrelevant.  Therefore, as to Plaintiffs' proposed issues two through six, the Court finds that common issues subject to general class wide proof predominate over any individual issues that might arise within those issues.

Plaintiffs' first proposed issue stands in stark contrast to the rest, asking whether each class member has been affected by bed bugs.  This is, by its own description, dominated by individual questions of fact.  Plaintiffs attempt to justify this issue by quoting both parties' experts as recommending that bed bug infestations be approached holistically.  As prudent as that may be regarding beds bugs, this issue refers to the *effects* of those bed bugs on individuals.  Necessarily, the individualized issues will dominate the overall proposed issue here.  Accordingly, the Court finds that Plaintiffs' first proposed issue fails the commonality test under Rule 23(b)(3).

2.    *Superiority*

Rule 23(b)(3) also requires that the "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," further articulating factors for courts to

---

[37] *Id.* at 414 (emphasis in original).

consider.[38]  The Tenth Circuit, however, has made clear that by far the most important factor is efficiency.[39]  Thus, courts will find "that class treatment is superior [when] it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' "[40]

Defendants offer four reasons for why deciding Plaintiffs' proposed issues in a class action is not superior to hundreds of individual trials, which would have to resolve the same issues.  First, Defendants argue that Plaintiffs' litigation scheme of deciding the class issues followed by hundreds of "mini-trials" for the other issues is inherently inefficient.  Second, Defendants claim that class certification of the issues will not materially advance disposition of this litigation. Third, and most interestingly, Defendants contend that the certifying the proposed class issues would violate the Seventh Amendment.  Finally, Defendants argue that class certification is not superior because Plaintiffs already have a significant stake in this litigation.

a.      Plaintiffs' litigation scheme is more efficient than hundreds of full trials

Defendants' first argument misses the point.  The question is not whether the proposal results in objectively efficient litigation, but whether it is *superior* to the alternative.  Of course, certifying the proposed class issues still necessitate further individualized trials to determine causation, damages, etc.  However, there can be no real dispute that determining the appropriate standard of care and Defendants' breach of that standard all in one fell swoop—instead of deciding those issues hundreds of times—is the more efficient, i.e., superior route.  Thus, by certifying the

---

[38] *See* Fed. R. Civ. Proc. 23(b)(3)(A)–(D).

[39] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014).

[40] *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

-14-

issue class, the Court will conserve judicial resources, as well as those of the parties. Accordingly, Defendants' argument fails on this point.

                       b.          Determining the standard of care and Defendants' potential breach thereof materially advances the litigation.

Defendants next argue that litigation of the class issues would not materially advance the litigation as a whole because they would not fully resolve Defendants' liability.[41]   In support of their position, Defendants cite *Fulghum v. Embarq Corp.*,[42] where this Court found that certifying "three elements of a breach of fiduciary claim, while leaving the fourth element to be decided on an individual basis, would not materially advance the disposition of the case for purposes of Rule 23(c)."[43]  Beyond this blanket statement, the Court conducted no further analysis.[44]

In contrast, this Court in *In re Motor Fuel Temperature Sales Practices Litigation*[45] found that certification of class issues materially advanced the litigation where the defendant's victory on the issues would terminate the class action.[46]  Similarly, the plaintiffs prevailing on those issues would allow the Court to determine whether injunctive relief was appropriate.[47]  Therefore, the Court found that certification of those class issues would advance the litigation "[b]y quantum leaps."[48]

---

[41] *See In re Motor Fuel*, 292 F.R.D. at 665 (holding that Rule 23(c)(4) issue classes should only be certified if resolution of those issues materially advances litigation).

[42] 2011 WL 13615 (D. Kan. 2011).

[43] *Id.* at *3.

[44] *See id.*

[45] 292 F.R.D. 652 (D. Kan. 2013).

[46] *Id.* at 667.

[47] *Id.*

[48] *Id.*

While perhaps not advancing the present litigation by "quantum leaps," certification of the proposed class issues falls closer to *In re Motor Fuel* than *Fulghum*.  Should Defendants prevail, then Plaintiffs' theory as to Defendants' breach of duty will be defeated.  Thus, they will not be able to prevail on their negligence claim and—more than likely—their other related claims as well.  Alternatively, should plaintiffs show that Defendants breached the relevant standard of care, it will still materially advance the litigation of this case and any individualized trials to come by determining necessary matters upon which Defendants' liability rests.  The fact that individualized issues, such as causation and damages, would remain unresolved does not preclude this finding.

Furthermore, nothing in Rule 23(c) prevents the certification of issues that do not fully resolve a defendant's liability.  Indeed, circuits courts adopting the "broad approach" to issue classes have explicitly held that even when "[c]lass treatment of [] certified issues will not resolve Defendants' liability entirely" it still can "materially advance the litigation."[49]  Although the Tenth Circuit has not yet ruled on this issue, the Court believes it would act in accordance with the clear weight of authority by authorizing certification of issue classes even when those issues do not fully resolve a defendant's liability.  For those reasons, the Court finds that certifying the proposed issue class materially advances this litigation.

      c.    The proposed issue class would not violate the Seventh Amendment.

Defendants' next argument is that bifurcating the trial between the class issues and the individualized issues runs afoul of the Seventh Amendment's Reexamination Clause.  The clause

---

[49] *See Martin*, 896 F.3d at 416.; *see also In re Nassau*, 461 F.3d at 229–30 (certifying class issues as to certain liability issues even though individualized liability issues also existed); *Russell*, 15 F.4th at 270 ("We therefore hold that district courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability."); *see also McReynolds*, 672 F.3d at 491 (certifying unlawful conduct element of racial discrimination claim while leaving adverse affectation issue for individualized determination).

states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States," not even by another jury.[50]  According to Defendant, separating liability issues—like here, where Plaintiffs seek to certify breach of duty but not causation—raises the possibility that juries will relitigate Defendants' liability in such a way that it violates the Seventh Amendment.

The potential for the Rule 23(c)(4) issue classes to run afoul of the Seventh Amendment has been mentioned before by this Court but never squarely addressed.[51]  At present, it seems that courts are split on the matter.  Some, cited by Defendants, view the potential redetermination of inter-related issues as so great as to prevent certification of issue classes that do not fully resolve a defendant's liability altogether.[52]  The typical argument unfolds, "[s]ince comparative negligence requires a comparison between the defendant's and the plaintiff's conduct, there is arguably a risk that in apportioning fault, the second jury could reevaluate the defendant's fault, even going so far as to reapportion 100% of the fault to the plaintiff."[53]

In contrast, many courts—along with "leading class treatises"[54]—have concluded that with careful case management and properly drafted jury instructions, bifurcation of liability issues need not violate the Seventh Amendment.[55]  After all, the Reexamination Clause "is not against having

---

[50] U.S. Const. amend. VII.

[51] *See Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 393 n.14 (D. Kan. 1998) ("The court recognizes that there is some disagreement on whether trying a single plaintiff's claims to multiple juries violates defendants' Seventh Amendment rights. However, reaching that issue is not necessary because the court finds that there are sufficient reasons, other than any Seventh Amendment concern, to deny certification."); *In re Motor Fuel*, 292 F.R.D. at 675 (certifying liability and injunctive relief "avoids possible Seventh Amendment and preclusion issues which other defendants raised in their proposed trial plan in the Kansas cases").

[52] *See, e.g.*, *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303–04 (7th Cir. 1995) (finding potential violation of Seventh Amendment sufficient to deny certification of issue classes when plaintiffs sought certification of breach of duty but not causation or comparative fault).

[53] *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 174 (S.D.N.Y. 2003) (further citation omitted).

[54] *Martin*, 896 F.3d at 417 (citing 2 Newberg on Class Actions § 4:92 (5th ed. 2010)).

[55] *See id.*; *Adkisson v. Jacobs Eng'g Grp., Inc.*, 370 F. Supp. 3d 826, 836–41 (E.D. Tenn. 2019); *In re Flint Water Cases*, 558 F. Supp. 3d 459 (E.D. Mich. 2021); *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169

-17-

two juries review the same evidence, but rather against having two juries decide the same essential issues."[56]   The Fifth Circuit, for example, perceived no Seventh Amendment dilemmas by addressing breach of duty on a class wide basis while leaving causation and comparative fault for individual determination.[57]   It persuasively concluded:

> When a jury considers the comparative negligence of a plaintiff, the focus is upon causation.   It is inevitable that a comparison of the conduct of plaintiffs and defendants ultimately be in terms of causation.   Thus, in considering comparative negligence, the phase-two jury would not be reconsidering the first jury's findings of whether Treasure Chest's conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member's injury.   Because the first jury will not be considering any issues of causation, no Seventh Amendment implications affect our review of the district court's superiority finding.[58]

In reaching a similar outcome, the Sixth Circuit in *Martin v. Behr Dayton Thermal Products, LLC*[59] further concluded that any potential violation of the Seventh Amendment was speculative at best during the class certification stage.   Recognizing that "if done properly, bifurcation will not raise any constitutional issues," the Sixth Circuit held that "[b]ecause the district court has not settled on a specific procedure, no constitutional infirmities exist at this

---

n.13 (2d Cir. 2001) ("Trying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment, but a given factual issue may not be tried by different, successive juries.  As one commentator has observed, avoiding this calls for sound case management, not outright avoidance of the procedure.") (further citations, quotations, and brackets omitted); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 628–29 (5th Cir. 1999); *In re Copley Pharm., Inc.*, 161 F.R.D. 456, 464 (D. Wyo. 1995) ("The Court's trial plan detailed below offers two phases of litigation that each involve "distinct and separable" issues and, as a result, the Seventh Amendment is preserved.").

[56] *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) (quoting *In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed.Cir.1986)); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2022 WL 3971006, at *8 (S.D.N.Y. 2022) (recognizing that same factual evidence may be used to determine separate factual issues without violating Seventh Amendment).

[57] *See Mullen*, 186 F.3d at 628–29.

[58] *Id.* at 629 (further citations and quotations omitted); *see also Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1356 (11th Cir. 2018) (citing *Mullen*'s analysis of class issue bifurcation with approval).

[59] 896 F.3d 405 (6th Cir. 2018).

time."[60]  It further noted that the district court's awareness of any potential Seventh Amendment issues "suggests that it will take care to conduct any subsequent proceedings in accordance with the Reexamination Clause."[61]  Thus, the defendants' argument against issue class certification was rejected.[62]

Applying *Martin*, the Eastern District of Michigan court in *In re Flint Water Cases*[63] concluded that "that careful trial management can allay Seventh Amendment reexamination concerns."[64]  With that in mind, the court extended an invitation to the parties to assist with "formulating trial plans, jury instructions, and verdict forms that crystallize the applicable issues and clarify those already decided."[65]

The Court acknowledges that it "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."[66]  Thankfully, that is not a pertinent risk to this litigation.  Whether Defendants breached the relevant standard of care is an entirely different factual issue than whether Defendants caused injury to the individual class members.  The comparative fault of those class members inevitably melds into the causation analysis without requiring a jury to redetermine whether Defendants breached a duty.  Although the factual *evidence* may be similar or identical on these points, the factual *issues* remain distinct.  Thus, like the Fifth Circuit, the Court concludes that the Seventh Amendment is not implicated by bifurcating the

---

[60] *Id.* at 417 (further citation and quotations omitted).

[61] *Id.*

[62] *Id.*

[63] 558 F. Supp. 3d 459 (E.D. Mich. 2021).

[64] *Id.* at 523.

[65] *Id.*

[66] *Matter of Rhone–Poulenc Rorer Inc.*, 51 F.3d at 1303.

-19-

breach of duty issues from causation.  Likewise, the specific issue of whether an apartment has value when infested by bed bugs is factually distinct from the amount of damages suffered by individuals.

Furthermore, the Court believes that any potential Seventh Amendment issues can be adequately addressed through proper case management.  The Court sees no reason why the nebulous concerns prophesied by Defendants cannot all find solutions in properly drafted jury instructions.  On this point, the Court adopts the invitation of *In re Flint Water* and "welcomes the participation of the parties in formulating trial plans, jury instructions, and verdict forms that crystallize the applicable issues and clarify those already decided."[67]   In any case, denying certification because of possible, if unlikely, Seventh Amendment violations is premature and unsuited to this stage of the case.  Should through the litigation process it become clear that Seventh Amendment violations are inevitable, the Court retains the ability to decertify or modify the class as appropriate.[68]   Accordingly, the Court finds that Plaintiffs' surviving proposed class issues do not violate the Seventh Amendment.

>    d.    The limited interest of individuals makes issue classes superior.

Finally, Defendants argue under Rule 23(b)(3)(A) that the class members' interest in the amount of damages potentially available to each is sufficient to motivate them to individually control the litigation.  Defendants try to distinguish between cases with de minimis individual recoveries and those where courts found that the expected recovery meant that "members of the

---

[67] *In re Flint Water Cases*, 558 F. Supp. 3d at 523.

[68] *See, e.g.*, *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("Moreover, a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.").

proposed class have a substantial stake and motivation to make individual decisions."[69]  In support

of this argument, Defendants cite a 1998 case where the individual recoveries was over $75,000[70]

and a 1996 case where that number skyrocketed to $500,000 per individual.[71]  Not only did those

courts find that these high recoveries motivated the plaintiffs to individually control the litigation,

but the courts also recognized that individual damages would be difficult to both determine and

calculate.[72]

As an initial matter, Plaintiffs' do not seek to certify any issues as to damages.  Therefore,

Defendants' argument is inapposite to this case.  Addressing Defendants' argument on its own

merits, however, it is clear that their cited cases stand in stark contrast to the present case where

the individual plaintiffs—by Defendants' own calculation—stand to recover only $39,600.

Perhaps not "de minimis," this is still a relatively paltry sum compared to the value of $75,000

nearly 25 years ago when considering inflation.  As Defendants' brief acknowledges:

> The policy at the very core of the class action mechanism is to overcome the
> problem that small recoveries do not provide the incentive for any individual to
> bring a solo action prosecuting his or her rights.  A class action solves this problem
> by aggregating the relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.[73]

Once again, the Court finds that $39,600 is not nearly enough to cover the costs of

litigation, even for the specific issues proposed for certification.  It belies reason to conclude that

this potential recovery invests the individual plaintiffs with a substantial interest in controlling the

---

[69] *Emig*, 184 F.R.D. at 393.

[70] *Id.*

[71] *Zapata*, 167 F.R.D. at 163.

[72] *See id.*; *Emig*, 184 F.R.D. at 393.

[73] *Amchem Prod., Inc.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).

particulars of the litigation.  This is especially true when the issues certified do not include damages, but rather leave those to the individual plaintiffs to control individually anyway. For these reasons, the Court concludes that class certification of Plaintiffs' proposed issues two through six is superior to other available methods for fairly and efficiently adjudicating the controversy under Rule 23(b)(3).

**C.     The Court appoints Plaintiffs' proposed counsel as class counsel.**

Under Rule 23(g)(1), the Court must appoint class counsel whenever it certifies a class.  In so doing, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[74]

Plaintiffs request that the Court appoint the following attorneys as class counsel: Bryce B. Bell, Mark W. Schmitz, and Jenilee V. Zentrich of Bell Law, LLC; Jeffrey M. Lipman of Lipman Law Firm, P.C.; and Gina Chiala and Amy Sweeny of Davis Heartland Center for Jobs and Freedom.  Defendants offer no objection to any of the propose class counsel.  After a review of the relevant factors, the Court considers the proposed counsel more than adequate and appoints the same as class counsel.

First, the voluminous and detailed briefing throughout the docket of the this case demonstrates that Plaintiffs' counsel has already put in much work identifying and investigating potential claims in this case.  Second, Plaintiffs can point to the extensive litigation experience of

---

[74] Fed. R. Civ. Proc. 23(g)(1)(A).

several of its proposed counsel both in and beyond class actions.[75]  Third, the Court concludes from the briefings thus far presented in this case that the proposed counsel's knowledge of the law is fully sufficient to represent the issue class.  And finally, considering the discovery, number of counsel representing Plaintiffs, and vigorous advocacy already achieved, it is clear that the proposed counsel has and will commit resources to representing the class.  Therefore, the Court appoints Bryce B. Bell, Mark W. Schmitz, Jenilee V. Zentrich, Jeffrey M. Lipman, Gina Chiala, and Amy Sweeny as class counsel in this case.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 148) is **GRANTED in part** and **DENIED in part**.  Specifically, the Court certifies the issue classes for Plaintiffs' proposed issue two through six, while denying certification of Plaintiffs' first proposed issue.

**IT IS FURTHER ORDERED** that Bryce B. Bell, Mark W. Schmitz, Jenilee V. Zentrich, Jeffrey M. Lipman, Gina Chiala, and Amy Sweeny are appointed as class counsel in this case.

**IT IS SO ORDERED.**

Dated this 23rd day of May, 2023.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[75] *See, e.g.*, *Riley*, 2019 WL 6998757, at *5 ("[D]efendants do not dispute that the proposed class counsel [Bell Law, Lipman Law Firm, and Chiala] will vigorously prosecute the action on behalf of the class.").