## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DONALD COE, LINDA SMITH, and )
EDWARD YOST, on behalf of themselves )
and other similarly situated, )
        )
      Plaintiffs, )
        )
v. )      **Case No. 22-CV-2047-EFM-ADM**
        )
CROSS-LINES RETIREMENT )
CENTER, INC. and YOUNG )
MANAGEMENT CORP., )
        )
      Defendants. )

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# TABLE OF CONTENTS

**I.   SUMMARY OF THE LITIGATION** ................................................................................ **5**

**II.  THE PROPOSED SETTLEMENT** ............................................................................... **6**

**III. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED** ............... **8**

**IV.  THE CLASS ACTION SETTLEMENT APPROVAL PROCESS.** ...................................... **8**

    A.   THE PROPOSED SETTLEMENT CLASS MEETS THE CERTIFICATION REQUIREMENTS OF RULE 23 ........ 8

       i.    The proposed settlement class meets the requirements of Rule 23(a). ....................... 9

       ii.   The proposed settlement class meets the requirements of Rule 23(b)(3). ................ 11

    B.   THE PROPOSED SETTLEMENT REFLECTS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION. ....... 12

       i.    The proposed settlement has no obvious deficiencies, has no .................................... 12

       ii.   The proposed settlement was fairly and honestly negotiated. ................................... 12

       iii.  Serious questions of law and fact exist, placing the ultimate outcome ..................... 13

       iv.   The value of an immediate recovery outweighs the mere possibility of .................... 14

       v.    The Parties believe the settlement is fair and reasonable. ......................................... 16

**V.   NOTICE AND FINAL FAIRNESS HEARING** ............................................................ **16**

    A.   THE PROPOSED NOTICE IS ACCURATE AND INFORMATIVE. ............................................... 16

    B.   THE PROPOSED METHOD OF NOTICE SATISFIES DUE PROCESS. ........................................ 17

    C.   FINAL FAIRNESS HEARING. ........................................................................................ 18

**VI.  CONCLUSION** ..................................................................................................... **18**

# TABLE OF AUTHORITIES

**CASES**

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ......... 11

*Bailes v. Lineage Logistics, LLC*, No. 15-cv-02457-DDC-TJJ, 2016 WL 7245201, at *6 ........... 16

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) .................... 12

*Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011) ...................................................................................................................... 12, 14, 16

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) ...................................................................................................................................... 17

*Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016) .......................... 17

*Integra Realty Resources, Inc.*, 354 F.3d 1246, 1262 (10th Cir. 2004) ................................... 6, 10

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ........................................... 10, 11

*Motor Fuel Temperature Sales Practice Litigation*, 286 F.R.D. 488, 503 (D. Kan. 2012) ............ 8

*Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) ................. 8

*Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *5 (D. Kan. Sept. 26, 2016) ......................................................................................................................... 11

*Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) ...................................... 8, 10

*Trevizo v. Adams*, 455 F.3d 1115, 1161-62 (10th Cir. 2006) ...................................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ............................................... 9

**RULES**

Fed. R. Civ. P. 23(e)(1) ............................................................................................................. 15

Fed. R. Civ. P. 23(e)(2) ............................................................................................................... 7

Settlement of a class action requires judicial approval, which typically consists of three stages: 1) preliminary approval; 2) dissemination of notice to the class; and 3) a fairness hearing to determine whether the settlement should be granted as fair, reasonable, and adequate for the class. Here, the Parties have reached a class-wide settlement which will provide compensation of approximately $200 per month in which the class member resided at the Cross-Lines Retirement Center during the class period, provide injunctive relief for the entire Center for three years to remedy the bed bug infestation, and allow for planned renovations to commence for Phase I. Plaintiffs are taking the first step in this process by seeking preliminary approval of the proposed settlement and asking the Court to enter an Order providing the following:

- Granting preliminary approval of the settlement;[1]
- Extending the current class period from February 1, 2017-May 23, 2023 to September 1, 2016-December 31, 2023, and expanding the scope of the class beyond just the certified issues to the agreed to settlement class;
- Approving the Parties' proposed form and method of giving Class members notice of the settlement;
- Directing that notice be given to Class members in the proposed form and manner;
- Setting procedures for people who fall within the Class definition to exclude themselves and for Class members to comment on the settlement; and
- Scheduling a final fairness hearing to determine whether the settlement should be granted final approval and Class Counsel should be awarded their reasonable attorneys' fees and expenses.

As discussed more fully below, the settlement achieves Plaintiffs' litigation objectives and meets the requirement under federal law for preliminary approval. The settlement was reached after extended arms-length negotiations and multiple mediations between the Parties. Importantly, the settlement provides important injunctive relief and compensation to Class members.

---

[1] **Exhibit 1**. Although approved by the Parties, the settlement agreement has not yet been executed by all Parties. Don Coe has been unable to sign due to severe illness after a recent medical procedure, and the representative for Cross-Lines Retirement Center, Inc. has been unable to sign due to logistical issues with obtaining her signature. Once all signatures have been recorded, Plaintiffs will file a supplemental exhibit to the Motion.

## I.    Summary of the Litigation

On February 1, 2022, Representative Plaintiffs filed a Complaint in the United States District Court District of Kansas against Defendants alleging several violations of state and federal law ("the Litigation"). The claims were predicated upon, generally, Defendants' failure to maintain habitability at Cross-Lines Retirement Center because of the alleged infestation of bed bugs. Cross-Lines is a non-profit corporation, having as its goal the provision of rental housing to elderly families and individuals. The alleged neglected conditions at Cross-Lines left elderly and disabled tenants captive to bed bug infestations, decaying rodent bodies, flooding, leaking, and mold. Since 2016, 90% or more of the apartment units at Cross-Lines have had documented bed bug activity, with nearly half of those infested units requiring six or more treatments.

On May 23, 2023, after extensive briefing on the issues by the Parties, the Court certified an issue class. The Court certified an issue class on five (5) issues as follows:

1. Did Defendants breach their standard of care by not requiring, and enforcing, the pest control companies to perform surrounding-unit inspections whenever a unit is found to have bed bugs?

2. Did Defendants breach their standard of care by refusing, or failing, to perform a full-building inspection of all units (Phase I and Phase II) at the same time.

3. Does the presence of bed bugs in an apartment make that unit unsafe, unsanitary, and/or unfit for living in?

4. Can an apartment which has bed bugs have an above-zero fair market value?

5. Are extermination services "essential" for an apartment unit in a multi-family housing structure when an adjacent unit has live bed bug activity? If yes, what services are "essential" (i.e., inspection, treatment, etc.)?

The Settlement provides for the resolution of all habitability related claims and causes of action asserted in the Litigation, or that could have been asserted in the Complaint filed February

1, 2022, against Defendants related to their tenancy, at the Cross-Lines Retirement Center, by and on behalf of Representative Plaintiffs and Class members.

## II.     The Proposed Settlement

Negotiations were conducted at arms-length between the Parties after substantial evidence had been amassed. This included extensive written discovery, numerous depositions, and extensive expert review and testimony. The Parties mediated with Judge Kevin Moriarty (Ret.) on October 26, 2022, October 11, 2023, and December 27, 2023 with lengthy follow-up discussions. On February 16, 2024, a settlement terms sheet was executed by the Parties, memorializing the principal terms of the settlement. The proposed settlement was a result of hard bargaining and compromises by both sides.

Pursuant to the settlement, the Parties agreed to expand the already-certified class of tenants to encompass all tenants during the time period of September 1, 2016 through December 31, 2023. The expanded class easily meets the requirements for class certification pursuant to Rule 23.[2]

Under the settlement agreement, Defendants agreed to an injunction and change of practices at the Cross-Lines Retirement Center relating to pest control treatment methodologies. Specifically, Defendants will provide professional pest control by a specific qualified company, subject to approval by Plaintiffs, with an agreed to protocol, to begin within thirty (30) days of the Preliminary Approval Order or sooner and continuing for a period of at least three (3) years.

The settlement also provides for monetary damages for current and former tenants. Defendants will establish a common fund for the Class of $4,600,000.00. Attorneys' fees, litigation expenses, costs of settlement notice and administration, pest control services, and service awards

---

[2] Importantly, the class was certified as an issue class before settlement negotiations began and Class Counsel acted as the negotiators for the class. *See In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1262 (10th Cir. 2004).

for the Named Plaintiffs will be paid out of the common fund, subject to approval by the Court. Class members will not need to submit claim forms, rather checks will be distributed based on class lists. However, class members will be responsible for determining if they have any Medicare or Medicaid liens related to treatment for injuries associated with this action. To assist class members with clearing and/or paying and Medicare or Medicaid liens, Class Counsel are including necessary forms for clients to execute so that Class Counsel may communicate directly with Medicare and Medicaid on behalf of the individual class members. If there are claims by Medicare or Medicaid, Class Counsel will review and negotiate them on behalf of the class members.

In advance of the Final Fairness Hearing, Class Counsel will file a Motion for an Award of Attorneys' Fees and Litigation Expenses. The Court will determine the amount of fees and expenses awarded, and that approved amount will be provided to Class Counsel from the common fund. Additionally, Class Counsel will seek a service award for the Named Plaintiffs, subject to court approval. Any service awards approved by the Court will be paid out of the common fund.

The Parties have agreed that up to $140,000.00 of the common fund may be used to pay for the cost of professional pest control services as part of Defendants' agreement to an injunction and change of practices. The Freedom Program offered by APM for pest control requires a large first-year investment; the Parties agreed that a small part of the Common Fund would be set aside to help offset the costs that exceed Defendants' annual budget for pest control. Finally, the Parties have agreed that the cost of notice and administration up to the amount of approximately $60,000.00 will be paid out of the common fund.[3]

---

[3] The Parties anticipate that the total cost of notice and administration will be less than $60,000.00. **Exhibit 5**. If less than $60,000.00 is used, the remainder will stay in the Common Fund to be distributed to class members.

### III.   The Proposed Settlement Should Be Preliminarily Approved

#### a.   The Class Action settlement approval process.

A district court may approve a proposed settlement only after "finding that it is fair, reasonable, and adequate."[4] "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."[5] In determining if a proposed settlement is fair, reasonable, and adequate, the court considers whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable."[6] These factors provide a "useful guide" for the Court at the preliminary approval stage.[7]

#### b.   The proposed settlement class meets the certification requirements of Rule 23.

Plaintiffs seek certification of the following settlement class: All persons who resided at Cross-Lines Retirement Center, 3030 and 3100 Powell Avenue, Kansas City, Kansas on or after September 1, 2016 through December 31, 2023. Excluded from this settlement class would be Defendants; any affiliate, parent or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of

---

[4] Fed. R. Civ. P. 23(e)(2).
[5] *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotations and citation omitted).
[6] *Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (citing *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 354 F.3d 1246, 1266 (10th Cir. 2004)).
[7] *In re Motor Fuel Temperature Sales Practice Litigation*, 286 F.R.D. 488, 503 (D. Kan. 2012).

Defendants; counsel in this action and anyone employed by counsel in this action; any judge to whom this case is assigned; that judge(s)' significant other(s); and members of the judge or judges' staff(s). Class Certification for the purposes of settlement is proper under Rule 23(a) and (b)(3).

### i. The proposed settlement class meets the requirements of Rule 23(a).

Under Fed. R. Civ. P. 23(a), a class may be certified if four prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately represent the interests of the class.[8]

First, Rule 23(a)(1)'s numerosity requirement is satisfied because the settlement class consists of approximately 332 individuals[9] and includes injunctive relief,[10] making joinder impracticable.[11]

Second, Rule 23(a)(2)'s commonality requirement is met because many common questions of law or fact exist that could be answered uniformly for the settlement class using the same evidence.[12] The settlement class members' claims would, if this matter litigated to trial, be proven in large part by common evidence regarding Defendants' policies and procedures with respect to inspection and treatment for bed bugs. Here, the common questions of fact or law include but are not limited to:

1. Did Defendants breach their standard of care by not requiring, and enforcing, the pest control companies to perform surrounding-unit inspections whenever a unit is found to have bed bugs?

---

[8] *Trevizo v. Adams*, 455 F.3d 1115, 1161-62 (10th Cir. 2006) (citing Rule 23(a)).
[9] *See* Schedule A to **Exhibit 1**.
[10] *See* **Exhibit 1**.
[11] *See Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006) (citations omitted).
[12] *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

2. Did Defendants breach their standard of care by refusing, or failing, to perform a full-building inspection of all units (Phase I and Phase II) at the same time?

3. Does the presence of bed bugs in an apartment make that unit unsafe, unsanitary, and/or unfit for living in?

4. Can an apartment which has bed bugs have an above-zero fair market value?

5. Are extermination services "essential" for an apartment unit in a multi-family housing structure when an adjacent unit has live bed bug activity? If yes, what services are "essential"?

Common evidence on these same questions would be presented in Plaintiffs' and the settlement class members' cases had the claims not been settled in this class action; litigating Defendants' conduct in hundreds of individual suits would be inefficient and cost more than the damages the settlement class members stand to individually recoup.

Third, Rule 23(a)(3)'s typicality requirement is satisfied because Named Plaintiffs and the settlement class members share the same legal theories.[13]

Fourth, as this Court has previously found, Named Plaintiffs and Class Counsel are adequate.[14] Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts between Named Plaintiffs and the other settlement class members.[15] Class Counsel has demonstrated that they have the experience and resources to adequately represent the settlement class. Additionally, Named Plaintiffs and Class Counsel have prosecuted this litigation vigorously.

---

[13] *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (typicality is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory") (citation omitted).
[14] ECF No. 179. *See In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1262 (10th Cir. 2004) (applying the law of the case doctrine to find that class representative was still adequate for the settlement class).
[15] *See Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015).

### ii. The proposed settlement class meets the requirements of Rule 23(b)(3).

Further, Rule 23(b)(3)'s predominance and superiority requirements are also satisfied here.[16] The settlement class members allege that Defendants' practices and policies with respect to inspection and treatment for bed bugs caused their injuries. Thus, this litigation "involves a great many common questions, including all issues regarding [Defendants'] conduct and the effects of that conduct."[17] The common questions under the shared legal theories predominate over and are more important than any potential individual issues that theoretically could arise if this case were tried.[18] Additionally, many of the injuries suffered by Plaintiffs and the settlement class members are common—i.e., the overpayment of rent given the uninhabitable conditions and personal injury from the bed bugs, including bites and scarring. Even if some settlement class members suffered damages not suffered by other class members, class certification is not defeated. It is axiomatic in the Tenth Circuit that "[t]he presence of individualized damages issues" is not a barrier to class certification and that "[c]lass-wide proof is not required for all issues for predominance under Rule 23(b)(3)."[19]

Finally, Rule 23(b)(3) also requires a finding that the class action method be superior to other available methods for fairly and efficiently adjudicating the controversy. The Tenth Circuit and the Supreme Court have summarized superiority as follows: "[i]t is enough that class treatment is superior because it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing

---

[16] *See Menocal*, 882 F.3d at 914-15.

[17] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *5 (D. Kan. Sept. 26, 2016) (certifying class action).

[18] As the Supreme Court has clarified post-*Dukes*, "the focus of Rule 23(b)(3) is on the predominance of common *questions*"—not necessarily common answers." *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) (emphasis in original).

[19] *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *5 (internal quotations omitted).

about other undesirable results."[20] As for superiority, class treatment is important here because it provides injunctive relief and monetary compensation to the class members. At the same time, the settlement allows Defendants to close the door on this chapter of their history and make good on their renewed commitment to improving the quality of life for their tenants by controlling and eradicating the bed bug infestation at Cross-Lines Retirement Center.

### c. The proposed settlement reflects a fair, reasonable, and adequate resolution.

#### i. The proposed settlement has no obvious deficiencies, has no preferential treatment, and is within the range of possible approval.

The settlement agreement and its exhibits evince no obvious deficiencies or preferential treatment. Neither any group of settlement class members nor Plaintiffs receive preferential treatment. The total amount of the settlement represents a substantial class-wide recovery, especially in light of the legal and factual defenses to liability raised by Defendants.[21] The settlement amount is fair, adequate, and reasonable for purposes of preliminary approval. Although the fairness, reasonableness, and adequacy of the settlement will be determined at the Final Fairness Hearing, the settlement is within the "range of possible approval" and presents no reason why preliminary approval should not be granted.

#### ii. The proposed settlement was fairly and honestly negotiated.

The proposed settlement is undeniably the product of contested litigation. In their Complaint, the Named Plaintiffs made detailed factual allegations describing Defendants' failure to address the allegedly horrific and uninhabitable conditions at the Cross-Lines Retirement Center. Defendants have adamantly denied these allegations and asserted an array of defenses, some of which Defendants argue would bar the Named Plaintiffs' claims in whole or in part.

---

[20] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (internal quotations omitted).
[21] *See Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011).

Indeed, Defendants were successful on their partial Motion to Dismiss, resulting in the dismissal of two of the Named Plaintiffs' claims.

The Parties conducted extensive discovery in this matter, including multiple rounds of written discovery, 16 depositions, extensive ESI discovery (tens of thousands of pages of documents produced), and expert discovery. The Parties had several discovery conference calls with Judge Mitchell and fully briefed several discovery disputes as well. Moreover, the Parties engaged in lengthy legal briefing, including Plaintiffs' Motion for Class Certification and the *Daubert* motions for both Parties' retained expert witnesses.

Prior to reaching a settlement agreement, the Parties exchanged numerous offers, attended three separate all-day mediations beginning October 2022 and concluding December 2023, and then spent months negotiating the terms of the proposed settlement. The settlement of this lawsuit resulted only after arms-length negotiations, significant and time-consuming data analysis, thorough factual investigation, extensive legal analysis, and discussions with opposing counsel and the mediator regarding the settlement structure and process. Prior to agreeing to the settlement, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this matter and to express and defend their positions to both experienced counsel and a knowledgeable and well-respected mediator.

### iii. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.

At this point, trying the issue class would not fully resolve Defendants' liability. As the Court noted in its Order certifying this issue class, even after the issues are tried, it will necessitate further individualized trials to determine causation, damages, etc.[22] Those trials could stretch on

---

[22] ECF No. 179 at 14.

for a lengthy time period at significant cost and risk for all Parties. Further, Defendants have raised several affirmative defenses that may bar, or reduce, any recovery for some tenants based on Defendants' allegations of comparative fault that would have been raised at trial. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."[23]

### iv. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

Here, there can be no doubt that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. The proposed settlement includes both injunctive relief and monetary compensation to the current and former tenants. Moreover, this settlement provides immediate recovery for all class members without the need to go through individualized trials to determine causation and damages after the class issues are tried, which, after summary judgment briefing, would likely be sometime in early 2025 or later.

First, the injunctive relief will provide immediate relief from the alleged uninhabitable conditions at the Cross-Lines Retirement Center for class members who still reside there, approximately 142 of the 332 Class members. As part of the settlement, Defendants have agreed to change their current pest control company to provide professional pest control by a qualified company, subject to approval by Plaintiffs. Defendants will be using the "Freedom Program" by American Pest Management ("APM"). APM has seen success in treating bed bug infestations in senior living centers. For example, APM was able to bring an infestation under control within four months in a senior living center that was approximately 30% infested with bed bugs.[24]

---

[23] *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *13 (N.D. Okla. Dec. 2, 2011) (internal quotations omitted).
[24] Exhibit B to **Exhibit 1**.

The Freedom Program is a comprehensive pest control plan and includes APM's Bed Bug Prevent Protocol, which provides both corrective and preventative pest management measures that are specifically tailored for the property. APM's Bed Bug Prevent Protocol includes a building-wide inspection and treatment twice a year, which means that future infestations can be controlled before they become widespread. This results in fewer total treatments and will reduce the risk of bed bugs from spreading beyond the initial infestation point. As part of the Freedom Program, APM will install *Active*Guard® Mattress liners[25] on all mattresses in every unit. *Active*Guard® Mattress liners kill bed bugs through contact and provide continuous protection for up to two (2) years. "Cutting edge research demonstrates that within only 10 minutes of contact, bed bugs tend not to feed and females do not drop their eggs, resulting in fewer bites and significant population control."[26] The *Active*Guard® Mattress liners will help provide immediate relief to tenants.

Second, Class members will receive compensation of approximately $208.04 per month (after deducting anticipated attorneys' fees, litigation expenses, service awards, administration and notice costs, and pest control services costs) they resided at the Cross-Lines Retirement Center during the time period of September 1, 2016 through December 31, 2023. This means that class members who have resided at the Cross-Lines Retirement Center for the full eighty-eight (88) months of the class time period will receive approximately $18,307.22 (after deducting anticipated attorneys' fees, litigation expenses, service awards, administration and notice costs, and pest control services costs).

---

[25] **Exhibit 2**.
[26] *Id.*

### v. In the judgment of the Parties and counsel, the settlement is fair and reasonable.

Given the legal and factual complexities of this matter and the number of individual jury trials that would be required to determine liability, causation, and damages for each Class member, the Parties believe the settlement is fair and reasonable. Class Counsel is experienced in class actions, including overseeing multiple class settlements. Based on their experience, Class Counsel believe this is a fair result that will provide relief for both the former and current tenants.[27] Additionally, the Named Plaintiffs are in favor of the settlement believing that it is generally fair and reasonable.

## IV. Notice and Final Fairness Hearing

When a court preliminarily approves a class action settlement, it must direct notice to class members.[28] The proposed notice must provide the best notice practicable under the circumstances and comport with due process.[29] To comport with due process, the notice must include "individual notice to all members who can be identified through reasonable effort."[30]

### a. The proposed notice is accurate and informative.

The proposed notice[31] is fair, complete, and neutral. The contents of the Notice describes the proposed Class, explains the material terms of the settlement, discloses Class Counsel's forthcoming application for attorneys' fees and reimbursement of expenses, gives notice of the time and place of the final fairness hearing, sets forth procedures and deadlines for opting out of the Class and submitting comments and objections, summarizes the proceedings to date, and

---

[27] *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *1 (N.D. Okla. Dec. 2, 2011) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." (internal quotations omitted)).
[28] Fed. R. Civ. P. 23(e)(1).
[29] *Bailes v. Lineage Logistics, LLC*, No. 15-cv-02457-DDC-TJJ, 2016 WL 7245201, at *6 (citations omitted).
[30] *Id.*
[31] Exhibit A to **Exhibit 1**.

clarifies that the settlement is not an admission of liability by Defendants, and that the Court has not ruled on the merits. Further, the language for the Notice has been negotiated and agreed to by the Parties.

### b. The proposed method of notice satisfies due process.

The Parties have agreed that the Settlement Administrator will mail notices,[32] set up a website, maintain a phone hotline, and use its best efforts to find any Class members whose original mailing is returned and re-send the Notice. The 332 settlement class members have already been identified from Defendants' records during the course of this litigation. As of February 1, 2024, approximately forty-three (43) percent of the settlement class members still reside at Cross-Lines Retirement Center. This method satisfies due process.[33]

Further, Class Counsel are continuing to dedicate resources to the class administration process so that all class members that wish to participate will have the necessary support to do so, including, but not limited to, hiring extra staff to help with clearing Medicare and Medicaid liens. Class Counsel have experience in assisting tenants with this process, having successfully resolved one hundred percent of Medicare and Medicaid claims in the settlement of the *Central Park Towers*[34] matter. Class Counsel have also participated in class cases with extremely high participation rates for class members, for example, *Nakamura v. Wells Fargo* (settlement class, 93% participation rate).[35]

---

[32] *Fager v. CenturyLink Commc'ns., LLC*, 854 F.3d 1167, 1173 (10th Cir. 2016) ("The Supreme Court has consistently endorsed notice by first-class mail" holding "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process.").

[33] *See DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).

[34] **Exhibit 3** at ¶¶ 5-11.

[35] **Exhibit 4** at ¶ 3.

### c. Final Fairness Hearing

Plaintiffs intend to seek a Final Fairness Hearing approximately ninety (90) days after the Court grants preliminary approval of the class settlement. This will provide ample time for the notice program to commence, the sixty-day opt-out and objection period, and final filings supporting final approval of the class settlement.

## V. Conclusion

The proposed class action settlement clearly meets the standard for preliminary approval in this case. Accordingly, Plaintiffs respectfully request that this Court enter an Order (1) granting preliminary approval of the settlement; (2) approving the Parties' proposed form and method of giving Class members notice of the settlement; (3) directing that notice be given to Class members in the proposed forms and manners; (4) setting procedures for Class members to exclude themselves and for Class members to comment or object on the proposed settlement; and (5) setting the Final Fairness Hearing on Wednesday, July 10 at 10:00 AM, or as soon thereafter as the Court's schedule allows, to determine whether this settlement should be granted final approval, whether Plaintiffs should receive a service award, and whether Class Counsel should be awarded their attorneys' fees and expenses.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
BELL LAW, LLC
Bryce B. Bell          KS#20866
Jenilee V. Zentrich      KS#29098
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

HEARTLAND CENTER
FOR JOBS AND FREEDOM
Gina Chiala            (*pro hac vice*)
Amy Sweeny Davis      (*pro hac vice*)
4120 A. Baltimore
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org
amysweenydavis@jobsandfreedom.org

**LIPMAN LAW FIRM, P.C.**
Jeffrey M. Lipman      (*pro hac vice*)
1454 30th St., Suite 205
West Des Moines, Iowa 50266
T: 515-276-3411
F: 515-276-3736
jeff@lipmanlawfirm.com

***Attorneys for Plaintiffs and Class Counsel***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on April 11, 2024, the above was electronically filed with the Clerk of the Court using the CM/ECF e-Filing system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jenilee V. Zentrich*