IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DONALD COE, LINDA SMITH, and EDWARD YOST, Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br><br>CROSS-LINES RETIREMENT CENTER, INC., and YOUNG MANAGEMENT CORP.,<br><br>*Defendants.* | Case No. 22-2047-EFM-ADM |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (Doc. 216). The named Plaintiffs—Donald Coe,[1] Linda Smith, and Edward Yost—have reached a settlement agreement with Defendants Cross-Lines Retirement Center, Inc. ("Cross-Lines") and Young Management Corp. ("Young"). Plaintiffs now seek this Court's preliminary approval of the settlement pending a final approval hearing.

---

[1] In their Supplement to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (Doc. 217), Plaintiffs inform the Court that they have been unable to reach Donald Coe due to health reasons. They believe he is currently unable to continue with his duties as a class representative and will not be a signatory to the proposed class settlement.

For the reasons set forth below, the Court conditionally certifies the proposed settlement class and preliminarily approves the proposed settlement under Rule 23. The Court also directs that notice be provided to all class members in the form and method proposed by Plaintiffs. Finally, upon further consultation with the parties, the Court will schedule a hearing date for final approval of the settlement.

## I. Factual and Procedural Background

Each of the named Plaintiffs rent residential apartments owned by Cross-Lines and managed by Young. Plaintiffs allege that the apartments' neglected condition leave "elderly and disabled tenants captive to bed-bug infestations, decaying rodent bodies, flooding, leaking, and mold." After Defendants successfully moved to dismiss two of Plaintiffs' claims, seven remain: (1) injunctive relief; (2) violations of the Fair Housing Act ("FHA"); (3) violation of the implied warranty of habitability; (4) breach of contract and statutory duty; (5) failure to provide essential services; (6) negligence; and (7) violation of the Kansas Consumer Protection Act.

On May 24, 2023, the Court granted Plaintiffs' motion for class certification of issue classes for the following questions:

> 1. Did Defendants breach their standard of care by not requiring, and enforcing, the pest control companies to perform surrounding-unit inspections whenever a unit is found to have bed bugs?
>
> 2. Did Defendants breach their standard of care by refusing, or failing, to perform a full-building inspection of all units (Phase I and Phase II) at the same time?
>
> 3. Does the presence of bed bugs in an apartment make that unit unsafe, unsanitary, and/or unfit for living in?
>
> 4. Can an apartment which has bed bugs have an above-zero fair market value?
>
> 5. Are extermination services "essential" for an apartment unit in a multi-family housing structure when an adjacent unit has live bed bug activity? If yes, what services are "essential" (i.e., inspection, treatment, etc.)?

Now, the parties have informed the Court that they have reached a settlement agreement[2] that fully resolves all claims in this case. In their present Unopposed Motion, Plaintiffs request: (1) conditional certification of the proposed settlement class; (2) preliminary approval of the proposed settlement; and (3) approval of the proposed form and manner of notice.

## II.     Legal Standard

**A.     Class Certification**

Federal Rule of Civil Procedure 23 governs the certification of class actions. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[3] While this question necessarily involves examining the facts and legal issues, courts must refrain from evaluating the strength of the plaintiffs' case.[4] The burden is on the plaintiffs to make a prima facie case that the putative class meets Rule 23's requirements.[5] Taking the "substantive, non-conclusory allegations of the complaint as true,"[6] courts must conduct a "rigorous analysis" of a plaintiff's complaint to ensure it meets Rule 23's requirements.[7] Even so,

---

[2] In considering the parties' proposed settlement agreement, the Court will examine Exhibit A to Plaintiffs' Supplement (Doc. 217), which is the updated version of the settlement agreement containing the signature for Cross-Lines' representative. It is substantively identical to the original settlement agreement filed as an exhibit to Plaintiff's Motion.

[3] *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th. Cir. 2010) (citations and internal quotations omitted).

[4] *See Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 612 (10th Cir. 2008).

[5] *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004).

[6] *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (further citations omitted).

[7] *Id.* at 1267.

"[c]ourts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[8]

**B.     Preliminary Approval of Settlement**

Rule 23(e) requires parties to obtain court approval for class action settlements. Courts may only grant approval when the settlement is "fair, reasonable, and adequate."[9] The Tenth Circuit has instructed district courts to consider four factors in assessing the fairness, reasonability, and adequacy of a class action settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.[10]

However, the Court is mindful that "[t]he settlement approval process typically occurs in two phases."[11] In the first stage, courts merely consider whether to grant *preliminary* approval of the settlement.[12] "The standards for preliminary approval of a class settlement are not as stringent as those applied for final approval."[13] Thus, courts "will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

---

[8] *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) (further citations omitted).

[9] Fed. R. Civ. P. 23(e)(2).

[10] *McFadden, v. Sprint Commc'ns, LLC*, 2024 WL 1533897, at *4–5 (D. Kan. Apr. 9, 2024) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

[11] *Id.* at *5.

[12] *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012).

[13] *Id.*

representatives or segments of the class and falls within the range of possible approval."[14] The Tenth Circuit factors, while a necessary assessment for final approval, are simply "a useful guide at the preliminary approval stage."[15]

### III.     Analysis

Plaintiffs, impliedly together with Defendants, bring several requests in their Motions. First, they ask the Court to certify their proposed class pending the final approval of the settlement. Second, they request that the Court preliminarily approve of the proposed settlement. Third, Plaintiffs seek the Court to approve the form and manner of notice. Lastly, Plaintiffs ask the Court to schedule a final approval hearing. The Court will address each request in turn.

**A.    The proposed class**

Plaintiffs seek certification of the following class: "All persons who resided at Cross-Lines Retirement Center, 3030 and 3100 Powell Avenue, Kansas City, Kansas on or after September 1, 2016 through December 31, 2023." Further, Plaintiffs' proposed definition excludes:

> Defendants; any affiliate, parent or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; counsel in this action and anyone employed by counsel in this action; any judge to whom this case is assigned; that judge(s)' significant other(s); and members of the judge or judges' staff(s).

Under Rule 23, plaintiffs must meet their burden in a two-step process. Plaintiffs must first demonstrate that all four prerequisites of Rule 23(a) are clearly met. If Plaintiffs meet that threshold requirement, then they must demonstrate that the action falls within one of the three categories set forth in Rule 23(b).

---

[14] *Id.* (further citation and quotations omitted).

[15] *Id.* at 503.

*1.  Rule 23(a)'s Requirements*

Rule 23(a) requires the proposed representative plaintiffs to show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Thus, the Court will evaluate each requirement in turn.

    a.    Numerosity

The first element requires the proposed class to be so "numerous that joinder of all members is impracticable."[16]  To show numerosity, plaintiffs "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[17] This Court has held that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action."[18] Even so, the numerosity inquiry looks beyond the sheer number of proposed class members.[19]  Courts should also examine "factors like the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members."[20]  For example, classes

---

[16] Fed. R. Civ. P. 23(a)(1); *see also Stambaugh v. Kansas Dep't of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993) ("'Impracticable does not mean impossible.'" (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993))).

[17] *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 504 (D. Kan. 2015) (further citations and quotations omitted).

[18] *Ogden v. Figgins*, 315 F.R.D. 670, 673 (D. Kan. 2016) (further citation and quotations omitted).

[19] *See Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995).

[20] *Id*.

with a "fluid nature" that "makes identifying class members difficult, if not impossible" has been held to favor a finding a numerosity.[21]

Here, the parties agree that the proposed class includes 332 individuals. Further, Plaintiffs seek injunctive relief as a part of their requested remedies, a factor which courts deem to favor finding numerosity. Considering the estimated size of the proposed class and that joinder is not practicable, the Court finds that Plaintiffs have shown numerosity under Rule 23(a)(1).

### b. Commonality

To establish commonality of issues, plaintiffs must show that a "common contention [is] of such a nature that it is capable of classwide resolution."[22] In other words, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[23] As such, the emphasis of Rule 23's commonality requirements is not the existence of "common *questions*" but rather whether those common questions would result in "common *answers* apt to drive the resolution of the litigation."[24] The inquiry here is not "whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is even a single common question."[25]

Plaintiffs claim that the same questions which previously formed the bases for the issue classes now establish the commonality requirement under Rule 23(a)(2). The Court agrees. The first and second questions speak directly to Defendants' liability, and their answers would

---

[21] *See Ogden*, 315 F.R.D. at 673 (holding that "ever-changing nature of [class] populations" favored a finding of numerosity).

[22] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (further citation and quotations omitted).

[23] *Id.* (further citation and quotations omitted).

[24] *Id.* (emphasis in original) (further citation and quotations omitted).

[25] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

materially advance this litigation by either establishing or removing Defendants' fault. The third and fourth questions require simple "yes or no" answers which would provide class members with a starting point from which to determine damages. Finally, the fifth question constitutes a factual issue central to defining the standard of care for Defendants as property managers. Because the answers to these common questions will advance the resolution of this case, the Court finds the Plaintiffs have met Rule 23(a)(2)'s commonality requirement.

        c.        Typicality

Under Rule 23(a)(3), plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The test for this requirement looks past differing factual situations "so long as the claims of named plaintiffs and class members are based on the same legal or remedial theory."[26] Thus, "[a] named plaintiff's interests and claims do not need to be identical to class members' interests and claims to satisfy typicality, but they must not be significantly antagonistic."[27] While conclusory allegations of typicality are insufficient to meet Rule 23(a)(3)'s requirement, "[d]emonstrating typicality is not an onerous burden."[28]

The Court previously found that the certified class issues were typical of all class members. Nothing has changed since then, so the typicality standard is once again met. All class members would rely on the same legal and remedial theories to prove Defendants' liability and obtain the requested relief. Therefore, the Court finds that Plaintiffs have adequately shown typicality.

---

[26] *In re Motor Fuel*, 292 F.R.D. at 670.

[27] *Florece v. Jose Pepper's Rests., LLC*, 2021 WL 5038773, at *4 (D. Kan. 2021) (citing *DG ex rel. Stricklin*, 594 F.3d at 1198–99; *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991)); *see also Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 622 (D. Kan. 2008) ("The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.").

[28] *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996).

    d.  Adequacy

The final element asks whether the named plaintiffs "will fairly and adequately protect the interests of the class."[29] In this inquiry, two questions are significant.[30] First, courts must examine whether conflicts of interest exist between the named plaintiffs and the other class members.[31] Second, courts must examine the adequacy of the named plaintiffs and their counsel such that the class members can expect vigorous prosecution of the action.[32] As this Court has previously stated:

> Minor conflicts between class members do not prevent certification. Only a fundamental conflict about the specific issues in controversy will prevent a named plaintiff from representing the interests of the class adequately. A fundamental conflict exists where some class members claim an injury resulting from conduct that benefited other class members.[33]

Here, the Court again finds that Rule 23(a)(4)'s adequacy requirement is fully met. Not only are Plaintiffs adequate representatives of the class's interests, but counsel has also demonstrated that they are "competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."[34] Accordingly, the Court finds that the requirements of Rule 23(a)(4) are met.

  2.  *Rule 23(b)(3)*

Given that Plaintiffs meet Rule 23(a)'s requirements, the Court now must analyze whether Plaintiffs meet Rule 23(b)'s requirements. Here, because Plaintiffs seek to certify their class under Rule 23(b)(3), they must show that "questions of law or fact common to class members

---

[29] Fed. R. Civ. P. 23(a)(4).

[30] *See Tripp*, 310 F.R.D. at 506.

[31] *Id.*

[32] *Id.*

[33] *Id.* (citations omitted).

[34] *Zapata*, 167 F.R.D. at 161.

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[35]

Therefore, the Court will assess whether Plaintiffs' proposed class meets the predominance and superiority requirements for class actions based on commons questions of law or fact.

        a.        Predominance

Under Rule 23(b)(3), Plaintiffs must "show that common questions subject to generalized, classwide proof predominate over individual questions."[36] This "requirement is related to, albeit 'more demanding than,' Rule 23(a)(2)'s commonality requirement."[37] Nevertheless, the Tenth Circuit has held that "[t]he presence of individualized damages issues" does not preclude finding predominance because "[c]lass-wide proof is not required for all issues."[38]

The Court finds that the questions proposed by Plaintiffs relating to liability and standard of care heavily predominate over individualized questions of damages. As noted in the commonality section, Plaintiffs' five proposed questions are common to all class members. Furthermore, many of the injuries suffered by Plaintiffs and the settlement class members are

---

[35] Fed. R. Civ. P. 23(b)(3)(A)–(D).

[36] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

[37] *Naylor Farms*, 923 F.3d at 789 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

[38] *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014).

common—i.e., overpaying rent given the uninhabitable conditions and personal injury from the bed bugs, including bites and scarring. And because the mere presence of individualized damages will not preclude a finding of predominance, the Court finds that the proposed class meets Rule 23(b)(3).

      b.      Superiority

Rule 23(b)(3) also requires that the "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," further articulating factors for courts to consider.[39] The Tenth Circuit, however, has made clear that by far the most important factor is efficiency.[40] Thus, courts find "that class treatment is superior [when] it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' "[41]

Here, it is clearly more efficient to determine the appropriate standard of care and Defendants' breach of that standard in one fell swoop—instead of deciding those issues hundreds of times. Thus, by certifying the issue class, the Court not only conserves judicial resources but the parties' resources as well.

For example, in *In re Motor Fuel Temperature Sales Practices Litigation*[42] this Court found that certification of class issues materially advanced the litigation where the defendant's victory on the class-wide issues would terminate the class action.[43] Similarly, the plaintiffs prevailing on

---

[39] *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

[40] *CGC Holding Co., LLC*, 773 F.3d 1096.

[41] *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

[42] 292 F.R.D. 652 (D. Kan. 2013).

[43] *Id.* at 667.

those issues would allow the Court to determine whether injunctive relief was appropriate.[44] Therefore, the Court found that certification of those class issues would advance the litigation "[b]y quantum leaps."[45]

While perhaps not advancing the present litigation by "quantum leaps," certification of the proposed class in this case shares the same benefits as certification did in *In re Motor Fuel*. Should Defendants prevail, then Plaintiffs' theory as to Defendants' breach of duty will be defeated. Thus, they will not be able to prevail on their negligence claim and—more than likely—their other related claims as well. Alternatively, should Plaintiffs show that Defendants breached the relevant standard of care, that still materially advances this case by determining necessary matters upon which Defendants' liability rests. The fact that individualized issues, such as causation and damages, would remain unresolved does not preclude this finding.

Based on the above analysis, the Court conditionally certifies the proposed settlement class subject to Plaintiffs later demonstrating at the final approval hearing that the requirements of Rule 23(a) and (b)(3) are clearly satisfied. Further, the Court appoints Plaintiffs' current counsel as counsel for the proposed class, for the same reasons mentioned in its previous order certifying the issue classes.[46]

**B.    The proposed settlement**

Next, Plaintiffs ask this Court to preliminarily approve the parties' settlement as required by Rule 23(e). Especially considering the relaxed standard for granting preliminary approval,[47] it

---

[44] *Id.*

[45] *Id.*

[46] *See* Doc. 179 at 22–23.

[47] *See, e.g.*, *McFadden*, 2024 WL 1533897, at *5 (noting that a "relaxed standard . . . is appropriate at the preliminary approval stage").

is clear the proposed class settlement comports with Rule 23(e). Reviewing the four factors, each weigh in favor of preliminarily approving the settlement.

First, the Court has no reason to believe that the parties did not fairly and honestly negotiate the proposed settlement. Plaintiffs represent that the proposed settlement is the result of three days mediation plus additional months of negotiation. Nothing in the settlement itself, the parties' briefing, or the history of this case suggests impropriety or dishonesty. The settlement does not preferentially favor the named Plaintiffs and appears to be the product of serious, informed, non-collusive negotiations. Therefore, this factor favors approving the settlement.

Second, serious questions of law and fact exist--such which place the ultimate outcome of the litigation in doubt. This factor likewise favors approval.

Third, the value of an immediate recovery heavily outweighs the mere possibility of future relief after protracted and expensive litigation. This is particularly true because the settlement includes injunctive relief to remedy the ongoing issues at Cross-Lines' apartments. The parties have even indicated their eagerness for preliminary approval so that they may begin implementing the agreed-upon relief as soon as possible. Under the proposed settlement, class members will receive compensation of approximately $208.04[48] for each month they resided at the Cross-Lines Retirement Center during the time period of September 1, 2016 through December 31, 2023. This means that class members who resided at the Cross-Lines Retirement Center during the entire class period will receive approximately $18,307.22. The Court finds Therefore, this factor favors approval.

---

[48] This number was calculated after deducting anticipated attorneys' fees, litigation expenses, service awards, administration and notice costs, and pest control services costs.

Finally, the parties agree that the settlement is fair and reasonable. Class counsel for Plaintiffs reaches this conclusion based on their long track record of overseeing multiple class settlements, and the named Plaintiffs likewise approve. By not opposing Plaintiffs' present Motion, Defendants likewise demonstrate that they wish for the Court's approval. Therefore, this factor favors preliminary approval of the settlement.

All factors favor finding that the proposed settlement satisfies Rule 23(e) for the purposes of the preliminary approval stage. Therefore, the Court preliminarily approves of the proposed settlement.

**C.     The proposed notice**

Plaintiffs next seek the Court's approval of their proposed form and method of the notice to be distributed to all class members. Upon granting preliminary approval of a settlement agreement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal"[49] and "who can be identified through reasonable effort."[50] Further, "[t]he parties' proposed notice must be the best notice practicable under the circumstances and must comport with due process."[51] Under Rule 23(c)(2)(B), that "notice must clearly and concisely" contain "plain, easily understood language" which conveys:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and

---

[49] Fed. R. Civ. P. 23(e)(1)(B).

[50] Fed. R. Civ. P. 23(c)(2)(B).

[51] *Bailes v. Lineage Logistics, LLC*, 2016 WL 4415356 (D. Kan. 2016) (citing Fed. R. Civ. P. 23(c)(2)(B); *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005)).

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the Court has reviewed the proposed notice form and concludes it comports with Rule 23(c)(2)(B) as well as due process. Using plain, easily understood language, the notice informs class members of the nature of the action, the class definition, and the class claims alongside Defendants' defenses. It further instructs class members how and when to request exclusion from the class and enter an appearance through an attorney. The notice also explains the binding effect of a class judgment and the effects of failing to object or request exclusion.

As to the manner of notice, the parties propose notifying each individual class member by mail, while also setting up a website and maintaining a phone hotline. The parties further promise to "use [their] best efforts to find any Class members whose original mailing is returned and re-send the Notice."

The Court finds that the manner and form of notice as proposed by the parties are the most practicable under the circumstances. Accordingly, the Court approves the proposed notice as submitted in Exhibit A to Exhibit 1 in Plaintiffs' Motion. The parties must send the proposed notice to each class member no later than 45 days after entry of this Order. Further, the parties must file with the Court proof of transmission of the notice at least seven days before the final approval hearing.

**D.     The final approval hearing**

The parties request that the Court set a hearing date for final approval of the settlement agreement approximately 90 days after the issuance of this Order granting preliminary approval. After conferring with the parties, the Court will issue a separate order setting the date and time for a final approval hearing. Once the hearing is scheduled, the details of that hearing shall be included in the notice provided to class members.

**IT IS THEREFORE ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (Doc. 216) is **GRANTED**.

**IT IS FURTHER ORDERED** that the proposed class be conditionally certified.

**IT IS FURTHER ORDERED** that Bryce B. Bell, Jenilee V. Zentrich, Jeffrey M. Lipman, Gina Chiala, and Amy Sweeny Davis are appointed as class counsel in this case.

**IT IS FURTHER ORDERED** that notice be provided to the class members in the proposed form and manner presented in Plaintiffs' Motion.

**IT IS SO ORDERED.**

Dated this 26th day of April, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE