IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DONALD COE, LINDA SMITH, and EDWARD YOST, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 22-CV-2047-EFM-ADM |
| CROSS-LINES RETIREMENT CENTER, INC. and YOUNG MANAGEMENT CORP., | ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

COME NOW, Plaintiffs, on behalf of themselves and all others similarly situated, and respectfully file this Motion for Final Approval of Class Action Settlement, and hereby moves this Court for final approval of the proposed Class Settlement. Plaintiffs respectfully request that the Court enter an Order granting:

1. Final judgment;

2. Final certification of the Settlement Class;

3. Final approval of the Class Settlement as fair, reasonable, and adequate;

4. Final approval of the Notice provided to the Settlement Class Members;

5. Final appointment of Bryce B. Bell and Jenilee V. Zentrich of Bell Law, LLC, Jeffrey M. Lipman of Lipman Law Firm, P.C., and Gina Chiala and Amy Sweeny Davis of Heartland Center for Jobs and Freedom as Class Counsel;

6. Approval of the distribution of the Common Fund as set forth in the Settlement Agreement and Schedule A thereto; and

1

7. Any further relief to which the Court finds Class Representatives and the Settlement Class entitled.

Contemporaneously with the filing of this Motion, Plaintiffs also move the Court for approval of Class Counsel's attorneys' fees and reimbursement of litigation expenses, and service awards for each of the Class Representatives. Plaintiffs are also filing a separate Combined Index of Exhibits that includes the declarations and documents offered in support of both motions.

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 5

II. Arguments & Authority ...................................................................................... 5

    a. The Court properly certified the Settlement Class for settlement purposes and should confirm this finding by finally certifying the Settlement Class under Rule 23. ....... 6

    b. The Notice method used was the best practicable under the circumstances and should be approved. ................................................................................................. 8

    c. The Settlement should be approved because it is fair, reasonable, and adequate. ... 10

        i. The Settlement is the product of extensive arm's-length negotiations ......................... 10

        ii. The substantial, immediate monetary relief provided for the Settlement Class is adequate and treats all Settlement Class Members equitably. ............................................. 11

        iii. The value of the immediate recovery outweighs the costs, risks, and delay of trial and appeal. ............................................................................................................... 12

    d. The distribution plan effectively and equitably distributes relief to the Settlement Class. ................................................................................................................... 14

III. Conclusion ........................................................................................................ 16

# **TABLE OF AUTHORITIES**

### CASES

*Ashley v. Reg'l Transp. Dist.*, No. 05-Cv-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) ---------------------------------------------------------------------------------10
*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) ----------------- 7
*Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016)------------------------ 8
*Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4 (D. Kan. 2009) --------------------------------------------------------------------------------------------------------9, 10
*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ------------------------- 10, 13
*McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008)---------------------------------------------------------------------------------13
*Menocal v. GEO Grp., Inc.*, 882 F. 3d 905, 914 (10th Cir. 2018) ---------------------------------- 6, 7
*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) ------------- 10, 13
*Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WWL 5371856, at *5 (D. Kan. Sept. 26, 2016) ------------------------------------------------------------------------------------- 7
*Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015)---------------------------------- 7
*Trevizo v. Adams*, 455 F. 3d 1155, 1161-62 (10th Cir. 2006) (citing Rule 23(a)(1)) ----------------- 6
*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) -------------------------------------- 6
*Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014)-------------------------------------- 7

### RULES

Fed. R. Civ. P. 23(e)(2)------------------------------------------------------------------------------------10
Fed. R. Civ. P. 23(e)(2)(D) -------------------------------------------------------------------------------14
Fed. R. Civ. P. 23(c)(2)(B)-------------------------------------------------------------------------------- 8
Fed. R. Civ. P. 23(e)(1)------------------------------------------------------------------------------------ 8
Fed. R. Civ. P. 23(e)(2)(C)(i)-----------------------------------------------------------------------------12
Fed. R. Civ. P. 23(e)(2)(C)(ii) ---------------------------------------------------------------------------14
Fed. R. Civ. P. 23(e)(2)(C)(iv) --------------------------------------------------------------------------11
Rule 23 ------------------------------------------------------------------------------------------------------10

### TREATISES

William B. Rubenstein, 4 *Newberg on Class Actions* § 13:39 (5th ed. 2018) ------------------------ 5

## I. Introduction

This lawsuit was filed February 1, 2022 arising from the alleged rampant bed bug infestations ongoing at Cross-Lines Retirement Center, Inc. ("Cross-Lines") apartment complexes. The Settlement Class Members are current and former tenants of Cross-Lines, which is owned by Cross-Lines and operated by Young Management. Cross-Lines is a nonprofit corporation, with a goal of providing rental housing to elderly families and individuals. Because of its nonprofit status, Cross-Lines received federal subsidies to purportedly allow it to offer lower rent. However, ownership and management have allegedly neglected the property for years, leaving elderly and disabled tenants captive to bed bug infestations. Now, after over two years of extensive, hard-fought litigation, the Parties have reached a class-wide settlement and now seek final approval from the Court of that settlement.

## II. Arguments & Authority

The procedure for review of a proposed class action settlement is a well-established, two-step process. First, the Court conducts a preliminary analysis to determine if the settlement should be preliminarily approved such that the class should be notified of the pendency of a proposed settlement.[1] The Court already carried out this first step with its Preliminary Approval Order.[2] Second, the class is notified and provided an opportunity to be heard at a fairness hearing before the settlement is finally approved.[3] Notice was effectuated pursuant to the terms of the Preliminary Approval Order.[4] The Court may approve the Class Settlement upon finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Plaintiffs ask the Court, at the conclusion of

---

[1] *See* William B. Rubenstein, 4 *Newberg on Class Actions* § 13:39 (5th ed. 2018).
[2] ECF No. 218.
[3] *See* William B. Rubenstein, 4 *Newberg on Class Actions* § 13:39 (5th ed. 2018).
[4] *See generally*, Exhibit 5.

the Final Fairness Hearing, to make this finding and approve the Settlement for the following reasons.

      **a. The Court properly certified the Settlement Class for settlement purposes and should confirm this finding by finally certifying the Settlement Class under Rule 23.**

The Court already preliminarily certified the following Settlement Class for the purposes of this Settlement:

> All persons who resided at Cross-Lines Retirement Center, 3030 and 3100 Powell Avenue, Kansas City, Kansas, on or after September 1, 2016 through December 31, 2023.[5]

Class Certification for the purposes of settlement was, and still is, proper under Rule 23(a) and (b)(3) for the reasons set forth in Plaintiffs' Motion for Certification of Settlement Class and Preliminary Approval of Class Settlement,[6] which is respectfully incorporated by reference as if set forth fully herein.

First, Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of 351 former and current tenants, whose joinder would be impracticable.[7] Second, Rule 23(a)(2)'s commonality requirement is met because many common questions of law and fact exist that could be answered uniformly for the Settlement Class using the same evidence.[8] The Settlement Class Members' claims would, if this matter were litigated to trial, be proven in large part by common evidence regarding Defendants' policies and procedures with respect to the treatment for bed bugs within the building.[9] Third, Rule 23(a)(3)'s typicality requirement is

---

[5] ECF No. 218.
[6] ECF No. 216.
[7] *See Trevizo v. Adams*, 455 F. 3d 1155, 1161-62 (10th Cir. 2006) (citing Rule 23(a)(1)); Exhibit 2 at ¶ 10.
[8] *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof" (internal quotations and citation omitted)); *see also Menocal v. GEO Grp., Inc.*, 882 F. 3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class" (internal citations omitted)).
[9] *See* ECF No. 216 at 9.

satisfied because Plaintiffs and the Settlement Class Members share the same legal theories.[10] Fourth, Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts between Class Representatives and the other Settlement Class Members.[11] Class Representatives and Class Counsel have prosecuted this Litigation vigorously, and, as the Court recognized in preliminarily appointing Class Counsel,[12] Class Counsel has demonstrated that they have the experience and resources to adequately represent the Settlement Class.[13] The adequacy of both Class Representatives and Class Counsel in representing the Settlement Class also supports final approval of the Settlement.[14]

Rule 23(b)(3)'s predominance and superiority requirements are also satisfied here.[15] The Settlement Class Members allege that Defendants' practices and policies with respect to treating the ongoing bed bug infestation caused their injuries. Thus, this litigation "involves a great many common questions, including all issues regarding [Defendants'] conduct and the effects of that conduct."[16] The common questions under the shared legal theories predominate over and are more important than any potential individual issues that theoretically could arise if this case were tried.[17] And, as for superiority, class treatment is important here because it allows Defendants to close the

---

[10] *See Menocal*, 882 F.3d at 914 (typicality is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory" (citation omitted)).

[11] *See Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) ("Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status" (internal citation omitted)).

[12] ECF No. 218.

[13] Exhibit 2 at ¶¶ 27-29, 37; Exhibit 2A.

[14] Fed. R. Civ. P. 23(e)(2)(A).

[15] *See Menocal*, 882 F.3d 905, 914-15 ("the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues" (citations omitted)); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

[16] *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WWL 5371856, at *5 (D. Kan. Sept. 26, 2016) (certifying class action).

[17] *See In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *5 ("'Class-wide proof is not required for all issues' for predominance under Rule 23(b)(3).") (quoting *In re Urethane Antitrust Litig.*, 768 F.3d at 1268-69).

door on this chapter of their history and clean up their practices—and the building—through the agreed-to injunctive relief.

The Court properly preliminarily certified the Settlement Class and, because Plaintiffs have shown that each of the requirements for certification under Rule 23(a) and (b)(3) remain satisfied, this finding should be confirmed with the final certification of the Settlement Class under Rule 23.

### b. The Notice method used was the best practicable under the circumstances and should be approved.

The Court should approve the Notice given to the Settlement Class. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[18] Also, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."[19] To satisfy due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[20] "The Supreme Court has consistently endorsed notice by first-class mail" and confirmed that "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process."[21]

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice attached as Exhibit A to the Settlement Agreement. The Court found the "manner and form of notice as proposed by the Parties are the most practicable under the circumstances" and "the proposed notice form . . . comports with Rule 23(c)(2)(B) as well as due process."[22] The

---

[18] Fed. R. Civ. P. 23(c)(2)(B).
[19] Fed. R. Civ. P. 23(e)(1).
[20] *Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016).
[21] *Id.* at 1173.
[22] ECF No. 218 at 15.

8

Court then directed the Parties to send the proposed notice to each class member in accordance with the schedule set forth in the Preliminary Approval Order.[23]

On May 24, 2024, the Settlement Administrator disseminated Long Form Notices via U.S. First Class Mail to the 325 identified class members with valid mailing addresses.[24] That same day, full versions of the Settlement Agreement and Preliminary Approval Order, along with other documents germane to the Settlement, were published on a public website created for and dedicated to this Action, www.CrossLinesSettlement.com.[25] This website is maintained by the Settlement Administrator, and includes additional information regarding the Settlement.[26]

The Notice fully informed Settlement Class Members about the Action, the Settlement, and the facts needed to make informed decisions about their rights.[27] The Notice also provided Class Members with a URL address for the dedicated Settlement website where Class Members could obtain further information regarding the Settlement, as well as their rights and options as they relate to the Settlement.[28] In addition, 30 additional Class Members were discovered after the initial mailing, and Simpluris sent additional notices out to those 30 individuals on July 1, 2024.[29]

In sum, the form, manner, and content of the Notice were the best practicable notice to reach these Class Members. Their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and afford them an opportunity to opt-out or object. Therefore, the Court should grant final approval of the Notice given to the Settlement Class Members.

---

[23] *Id.*
[24] Exhibit 5 at ¶ 4. It was later determined that four of the 325 individuals were actually duplicates, making the class size 321.
[25] Exhibit 5 at ¶ 5.
[26] Exhibit 5 at ¶ 5.
[27] Exhibit 5A.
[28] Exhibit 5A.
[29] Exhibit 5 at ¶¶ 10-11.

### c. The Settlement should be approved because it is fair, reasonable, and adequate.

Under Federal Rule of Civil Procedure 23(e), any "settlement, compromise or dismissal of certified class claims" requires court approval.[30] The Court may approve a settlement if it finds that the settlement is "fair, reasonable, and adequate."[31] To determine whether a proposed settlement is fair, reasonable, and adequate, the Court considers the factors enumerated in Rule 23(e)(2).[32] Courts in the Tenth Circuit also consider whether, in the parties' judgment, the settlement is fair and reasonable.[33] Those factors weigh in favor of approval of the Settlement.

### i. The Settlement is the product of extensive arm's-length negotiations.

Under Rule 23(e)(2)(B), the Court considers whether "the proposal was negotiated at arm's length." Here, there can be little doubt that it was. The Settlement was achieved only after three full-day mediation sessions and months of continuing settlement efforts and negotiations.[34] The use of a formal settlement process such as mediation supports the conclusion the Settlement was fairly and honestly negotiated.[35]

---

[30] *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *4 (D. Kan. 2009).
[31] *Id.*; *see also* Fed. R. Civ. P. 23(e)(2).
[32] Fed. R. Civ. P. 23(e)(2).
[33] *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Rule 23, as amended effective December 1, 2018, essentially codifies three of the four factors traditionally considered by courts in the Tenth Circuit when deciding whether to finally approve a class action settlement. Those factors include: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. These factors are addressed to the extent they differ from or expand upon the corresponding Rule 23(e)(2) factor.
[34] Exhibit 1 at ¶ 24.
[35] *See, e.g., Ashley v. Reg'l Transp. Dist.*, No. 05-Cv-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal mediation conference and negotiations over four months).

> ii. **The substantial, immediate monetary relief provided for the Settlement Class is adequate and treats all Settlement Class Members equitably.**

Under Rule 23(e)(2)(C), the Court is to consider the adequacy of the relief provided for the class considering: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees, including the timing of the payment; and (iv) any agreement made in connection with the settlement proposal. Those factors weigh heavily in favor of approval here.

Under the Settlement, Defendants have agreed to pay $4,600,000.00 into a Common Fund, which will pay for compensatory damages to the class members, attorneys' fees, litigation expenses, service awards for the Class Representatives, notice and administrative costs, and pest control above and beyond Defendants' annual budget for the term of the injunctive relief.[36] Defendants already transferred the Common Fund to the Settlement Administrator shortly after the Court's Preliminary Approval Order. The Settlement also includes additional benefits that are not easily quantified, like the injunctive relief.[37] The Settlement Agreement contains all agreements made in connection with the Settlement; there are no other agreements between the Parties or their counsel.[38]

The Common Fund will be used to pay any approved service awards to the Class Representatives at the same time that checks are distributed to all Class Members after Final Approval. However, the Settlement is not conditioned upon Court approval of the service award to the Class Representatives.[39] Checks for Class Members will be mailed by the Settlement

---

[36] Exhibit 7 at ¶ 2.1.
[37] Exhibit 7 at ¶ 2.9.
[38] Fed. R. Civ. P. 23(e)(2)(C)(iv).
[39] Exhibit 7 at ¶ 2.4.

Administrator within sixty (60) days of Final Approval.[40] Any attorneys' fees and litigation expenses approved and awarded by the Court shall be paid by the Settlement Administrator to Class Counsel within ten (10) days of Final Approval.[41] Costs of Settlement Notice and Cost of Administration shall be deducted by the Settlement Administrator after all checks have been distributed to the Class Members. Costs for pest control services up to $140,000.00 will be deducted from the Common Fund as incurred.[42] After deduction of attorneys' fees, litigation expenses, service awards, costs of notice and administration, and pest control costs, over $2.7 Million[43] will be distributed directly to the Class Members, with each Class Member receiving approximately $200 per month lived at Cross-Lines during the Class Period.[44] Critically, none of the common funds will revert to the Defendants.[45] This immediate, substantial monetary relief is adequate under the Rule 23(e)(2)(C) factors.

### iii. The value of the immediate recovery outweighs the costs, risks, and delay of trial and appeal.

The costs, risks, and likely duration of further litigation support approval of the proposed Settlement.[46] The immediate value of the Common Fund alone outweighs the costs of litigating the case to a verdict, especially because the Settlement includes significant injunctive relief to remedy the ongoing issues at Cross-Lines' apartments. Consistent with the Settlement after the Preliminary Approval Order, Defendants engaged American Pest Management ("APM") for pest

---

[40] Exhibit 7 at ¶ 7.1. Class Counsel hopes to distribute all checks earlier than sixty (60) days after Final Approval but recognizes that the clearing of Medicare and Medicaid liens is a time-consuming process and may not be completed for each Class Member at the same time.
[41] Exhibit 7 at 7.2.
[42] Exhibit 7 at 2.9.2.
[43] This figure assumes the Court will grant Class Counsels' request for reimbursement of litigation expenses, attorneys' fees, and service awards as set forth in their Motion.
[44] September 1, 2016 to December 31, 2023. The maximum number of months during the Class Period is 88.
[45] Exhibit 7 at ¶ 2.5.
[46] *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

control services at the Cross-Lines apartments.[47] On June 6, 2024, APM held a manager's meeting with onsite personnel, held a resident Town Hall informational meeting, and conducted an initial building-wide inspection.[48] The 45-minute Town Hall meeting was attended by over 35 residents,[49] and the residents were given an opportunity to ask questions.[50] The June 6th inspection found 68 units with live bed bug infestation, 119 units with live roach infestation, and allowed APM to retrieve the size of tenants' beds for the Active Guard bed liners.[51] APM's first treatment was scheduled for June 25, 26, and 27, 2024.[52] During those three days, APM was able to enter and provide treatment in all common areas, the basement, the exterior, and all but 10 units in the complex.[53] Treatment consisted of a thorough inspection, vacuuming of live and dead bugs, crack and crevice treatment in high pest traffic/harborage areas, insect baiting, and the installation of an Active Guard liner or Box Spring encasement on the bottom of the mattress or box spring.[54] APM is confident that with continued cooperation from all parties, it will be able to improve the pest infestation to a manageable level within six months and to a level of 10% infestation within the year.[55]

Successfully litigating a class action case against well-funded, sophisticated opponents through an issues class trial followed by potentially 351 individual damages trials, and a potential appeal of final judgment(s) generally requires class counsel to devote a substantial amount of its time, labor, and money. Absent the Settlement, there is little guarantee that such fees and expenses

---

[47] Exhibit 6 at 1.
[48] Exhibit 6 at 1-2.
[49] Exhibit 6 at 1. This Town Hall meeting was one of the best attended meetings APM has been a part of. Exhibit 6 at 2.
[50] Exhibit 6 at 1.
[51] Exhibit 6 at 2.
[52] Exhibit 6 at 2.
[53] Exhibit 6 at 2-3.
[54] Exhibit 6 at 3.
[55] Exhibit 6 at 3.

could easily overwhelm any recovery received later down the road. Therefore, even if the Class Members were to ultimately obtain a favorable judgment, in light of the potential for the costs of litigating the case to significantly reduce the recovery payable to the class, the Settlement Class is quite likely "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."[56]

Furthermore, while Class Counsel is confident in their ability to prove the claims asserted, they also recognize that liability is far from certain and many potential obstacles to obtaining a final, favorable verdict exist. The Parties disagree on many issues of liability under the various claims asserted by Plaintiffs, the cause of any alleged injuries, and the value of the alleged damages. These unresolved questions place the ultimate outcome of the litigation in doubt.[57] Such doubt "tips the balance in favor of settlement because settlement creates a certainty of some recovery and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."[58]

Finally, the global resolution of this matter now paves the way for renovations of Phase I of Cross-Lines to begin, and, upon information and belief, has already begun.

### d. The distribution plan effectively and equitably distributes relief to the Settlement Class.

Class Counsels' Distribution Plan is attached as Schedule A to the Settlement Agreement.[59] Schedule A remains largely unchanged from what was presented for preliminary approval, other than adjustments made to account for the additional thirty (30) class members identified during the Notice program, corrections to the number of months class members resided at Cross-Lines

---

[56] *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).
[57] *See Rutter*, 314 F.3d at 1188; *Jones*, 741 F.2d at 324.
[58] *McNeely*, 2008 WL 4816510, at *13 (internal citations omitted).
[59] Exhibit 7, Schedule A.

Retirement Center, and removing three (3) Opt-Outs. The Distribution Plan is an effective and equitable method of distributing relief to the Settlement Class.[60] This is not a claims-made settlement and requires minimal further action to participate.

Because the Settlement involves the resolution of claims for personal injuries, Class Members may owe Medicare and/or Medicaid reimbursement for treatments received during the Class Period because of bed bugs. To prevent this from being a barrier to Class Members receiving funds under the Settlement, Class Counsel has diligently been assisting Class Members in clearing any Medicare and/or Medicaid liens.[61] To help facilitate this, Class Counsel included forms in the Notice packets that Class Members could fill out and return that then allow Class Counsel to speak directly to Medicare and/or Medicaid on behalf of the Class Member to determine if such a lien exists, and, if such a lien exists, the forms also allow Class Counsel to negotiate with Medicare and/or Medicaid the amount of the lien, including requesting that any such lien be waived.[62] However, Class Counsel is not simply sitting around waiting for Class Members to return the completed packets; rather, Class Counsel has proactively been contacting Class Members to help them complete the packets and answer questions about the Settlement.[63] As of July 17, 2024, Class Counsel have had direct contact with over 140 Class Members and are continuing daily to contact the remaining approximately 210 Class Members.[64]

Furthermore, the Distribution Plan contains various measures to ensure that the Settlement Class Members receive their payments, including extensions of the original 60-day voiding period for reissued checks.[65] Moreover, Class Counsel will continue to dedicate time and resources to

---

[60] *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) and 23(e)(2)(D).
[61] Exhibit 2 at ¶ 11-13.
[62] Exhibit 5, Exhibit A.
[63] Exhibit 2 at ¶¶ 11-15.
[64] Exhibit 2 at ¶¶ 12-15.
[65] Exhibit 7 at ¶ 9.15.

contacting each individual Class Member to ensure every Class Member is afforded an opportunity to participate in the Settlement and receive compensation.[66] In the event the Common Fund retains a positive balance following these distributions, the Class Members who received payments from the first distribution will be eligible for a second, supplementary pro-rata distribution.[67] In the event that the Common Fund retains a positive balance six months after the distribution of any Supplementary Distributions, the Parties agree that such funds shall be made a *cy pres* donation, the recipient of which will be the National Association of Consumer Advocates ("NACA").[68] Any *cy pres* funds received by NACA will be dedicated to fair, safe, and habitable housing in the Kansas City, Kansas area.

The Distribution Plan is specifically structured to the class of former and current tenants to maximize the likelihood that Settlement payments are received and successfully deposited.

### III. Conclusion

The Settlement provides immediate and substantial monetary relief to hundreds of individuals and important injunctive relief to approximately half of those individuals. For all the foregoing reasons, Class Representatives and Class Counsel respectfully request that the Court enter an Order granting: (1) final judgment; (2) final certification of the Settlement Class; (3) final approval of the Settlement as fair, reasonable, and adequate; (4) final approval of the Notice provided to the Settlement Class Members; (5) final appointment of Bryce B. Bell and Jenilee V. Zentrich of Bell Law, LLC, Jeffrey M. Lipman of Lipman Law Firm, P.C., and Gina Chiala and Amy Sweeny Davis of Heartland Center for Jobs and Freedom as Class Counsel; and (6) distribution of the Settlement Amount as set forth in Schedule A to the Settlement Agreement.

---

[66] Exhibit 1 at ¶ 28.
[67] Exhibit 7 at ¶ 2.6.
[68] Exhibit 7 at ¶ 2.7.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
BELL LAW, LLC
Bryce B. Bell          KS#20866
Jenilee V. Zentrich    KS#29098
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

HEARTLAND CENTER
FOR JOBS AND FREEDOM
Gina Chiala           (*pro hac vice*)
Amy Sweeny Davis      (*pro hac vice*)
4120 A. Baltimore
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org
amysweenydavis@jobsandfreedom.org

**LIPMAN LAW FIRM, P.C.**
Jeffrey M. Lipman     (*pro hac vice*)
1454 30th St., Suite 205
West Des Moines, Iowa 50266
T: 515-276-3411
F: 515-276-3736
jeff@lipmanlawfirm.com

*Attorneys for Plaintiff and Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 18, 2024, the above was electronically filed with the Clerk of the Court using the CM/ECF e-Filing system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jenilee V. Zentrich*