**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DONALD COE, LINDA SMITH, and** ) | |
| **EDWARD YOST, on behalf of themselves** ) | |
| **and other similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 22-CV-2047-EFM-ADM** |
| ) | |
| **CROSS-LINES RETIREMENT** ) | |
| **CENTER, INC. and YOUNG** ) | |
| **MANAGEMENT CORP.,** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR REIMBURSEMENT OF LITIGATION EXPENSES, AWARD OF ATTORNEYS' FEES, AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

COME NOW, Plaintiffs, and respectfully move this Court for entry of an Order approving the following, in accord with the Parties' Settlement Agreement and Section 16 of the Class Notice:

1) Reimbursement of Class Counsel's litigation expenses in the amount of $91,287.80;

2) Class Counsel attorney fees in the amount of $1,501,401.16, which represents one-third of the Common Fund after reimbursement of litigation expenses; and

3) Service Awards in the amount of $5,000.00 for each Named Plaintiff for a total of $15,000.00.

In support of this Motion, Plaintiffs provide the following memorandum of law in support:

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ................................................................................................ **4**

    A.   BACKGROUND FACTS ............................................................................. 4

    B.   EFFORTS OF CLASS COUNSEL & RESULTS OBTAINED ........................... 5

II.   **ARGUMENT & AUTHORITIES** ..................................................................... **8**

    A.   ATTORNEYS' FEES ARE CALCULATED AS A PERCENTAGE OF THE COMMON FUND UNDER TENTH CIRCUIT LAW. ...................................................................................... 9

    B.   THE FEE REQUEST IS REASONABLE UNDER THE *JOHNSON* FACTORS. .................................... 10

    C.   THE REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE UNDER FEDERAL COMMON LAW. ........................................................................... 17

    D.   A SERVICE AWARD OF $5,000.00 FOR EACH NAMED PLAINTIFF IS REASONABLE. ............... 18

III.   **CONCLUSION** ........................................................................................... **20**

## TABLE OF AUTHORITIES

### CASES

488 F.2d 714 (5th Cir. 1974) ----------------------------------------------------------------- 10

*Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) --------------------------------------------------------------------------- 10

*Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ------------------------------------------ 10

*Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) -------------------------- 9

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988) ------------------------ passim

*Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009) ------------------------------------------------- 10, 18

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) --------------- 9

*Chieftain Royalty Co. v. Laredo Perto., Inc.*, No. CIV-12-1319, 2015 WL 2254606, at *2 (W.D. Okla. May 13, 2015) ------------------------------------------------------------------------- 16

*Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) ------------------------------------------------------------------ 12

*Childs v. Unified Life Ins. Co.*, No. 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) ------------- 12

*CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ------------------------------------------------------------------- 16

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ---------------------------------------------------- 12

*Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015) --------------------------------------------------- 15

*Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ----------------------------------------- 9

*Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994) ----------------------------------------- 9

*Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) ------------------- 11

*Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) ------------------------------------------------------------------------------ 10

*Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015)9, 14, 16, 19

*Northumberland*, 2014 WL 12014020, at *3, n.1 ------------------------------------------------ 12

*Schell v. Oxy USA, Inc.*, 814 F.3d 1107, 1112 and 1125-26 (10th Cir. 2016) ------------------- 16

*Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) ------------------------ 18

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) --------------------------- 9

*Tommey v. Computer Scis. Corp.*, No. 11-Cv-02214-EFM, 2015 WL 11070580, at *1 (D. Kan. May 27, 2015) --------------------------------------------------------------------------------- 18

*Universal Serv. Fund Tel. Billing Practices Litig.*, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) ---------------------------------------------------------------------------------------- 10

*Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ---------------------------------------------------------------------------------------- 17

*Wal-Mart Stores, Inc. v. Via U.S.A., Inc.*, 396 F.3d 96, 120 (2nd Cir. 2005) ------------------ 9

### RULES

Fed. R. Civ. P. 23(h) --------------------------------------------------------------------- 9, 11, 17

In support of Plaintiffs' Motion for Award of Reimbursement of Litigation Expenses, Award of Attorneys' Fees, and Service Awards for the Class Representatives, Plaintiffs respectfully request the Court enter an Order directing the Claims Administrator to pay Class Counsel's attorneys' fees and reimburse its reasonable expenses incurred in connection with the prosecution of this matter.[1] Plaintiffs and Class Counsel submit the agreed-upon fee is reasonable considering the settlement achieved in this action, as is the reimbursement of the reasonable litigation expenses advanced on behalf of the Settlement Class.

## I.    Introduction

### a.  Background Facts

Named Plaintiffs engaged Class Counsel to prosecute this matter on behalf of themselves and a putative class of former and current tenants on a contingency-fee basis.[2] Named Plaintiffs agreed to a fee of 40% of any recovery obtained for the putative class as a result of judgment or settlement, which would increase to 45% in the event of appeal requiring additional representation.[3] Pursuant to this agreement, Class Counsel represented Named Plaintiffs and the putative class and, after significant discovery and motion practice, achieved the settlement under which Defendants have agreed to pay $4,600,000.00 into a Common Fund.[4] Moreover, Defendants have agreed to injunctive relief that will provide extraordinary relief to current tenants.[5] Here, Class Counsel seek one-third (33%) of the net Common Fund[6] as attorneys' fees plus litigation

---

[1] Contemporaneously with the filing of this Motion, Plaintiffs also move the Court for final approval of the Class Action Settlement.
[2] Exhibit 1 at ¶ 22.
[3] Exhibit 1 at ¶ 23.
[4] *See generally,* Exhibit 7.
[5] *Id.* at ¶ 2.9.
[6] Pursuant to the fee agreement, Named Plaintiffs agreed that all litigation expenses and costs would be deducted from any recovery before calculating the attorneys' fees as a percentage of the recovery. *See* Exhibit 1 at ¶ 23.

costs and expenses in the amount of $91,287.80.[7] The percentage sought is lower than the 40% agreed to by the Named Plaintiffs in their fee agreement.

### b. Efforts of Class Counsel & Results Obtained

Class Counsel did not decide lightly to become involved in this matter. Extensive pre-suit investigation took place before Class Counsel even became engaged in this matter and brought the instant lawsuit.[8] And, after filing the lawsuit, Class Counsel did not take their foot off the gas, but instead steadfastly pursued discovery, including written discovery, depositions, and subpoenas to third parties.[9] The Parties produced thousands of pages of documents regarding the living conditions at and pest control records for Cross-Lines Retirement Center, Inc. ("Cross-Lines").[10] The Parties disagreed on many aspects of discovery and engaged in multiple telephonic conference calls with Magistrate Judge Angel D. Mitchell to resolve discovery disputes and obtain critical information to be exchanged ahead of depositions.[11] The Parties also engaged in numerous depositions, including the three named plaintiffs, a representative from each of the three pest control companies that treated the building during the class period, four individuals from the United Government of Wyandotte County, and four individuals designated as corporate representatives by Defendants.[12] These depositions involved multiple days of testimony and days of preparation by counsel for each deposition. During discovery, Plaintiffs also requested on-site access for inspections related to (1) roofing; (2) mold, mildew, and asbestos; and (3) pests and vermin.[13] The Parties spent weeks negotiating an Agreed Inspection Protocol.[14]

---

[7] Exhibit 1 at ¶ 37; Exhibit 1, Exhibit A.
[8] Exhibit 1 at ¶ 9.
[9] Exhibit 1 at ¶¶ 10-11.
[10] Exhibit 1 at ¶ 10.
[11] Exhibit 1 at ¶ 10.
[12] Exhibit 1 at ¶ 11.
[13] Exhibit 1 at ¶ 12.
[14] Exhibit 1 at ¶ 12.

The results obtained in this matter can be partially credited to Jeffrey White, the expert retained by Class Counsel in this matter.[15] Mr. White has an impressive resume, having a masters degree in entomology, 17 years' experience in pest control, and numerous peer-reviewed publications and public speaking engagements on pest control.[16] Mr. White has personally treated and assisted in treating hundreds of bed bug infestations, including consulting with hundreds of pest management companies on the proper way to inspect and treat for bed bugs.[17] In fact, Mr. White has also worked with over 100 property management companies, including dozens of affordable housing communities, over his career.[18] These experiences have provided Mr. White with perspective and expertise on controlling bed bugs and other pests in multi-family housing settings.[19] Identification and use of such an esteemed expert as Mr. White helped Class Counsel significantly in preparing their case and forming case strategy. Specifically, Mr. White helped Class Counsel determine the appropriate method for inspecting the premises and how to utilize the information gained through the on-site inspection.

In addition to Mr. White, in preparation for trial on the five issues certified by the Court, Class Counsel retained a property management expert to testify as to the standard of care as to the overall condition and habitability of Cross-Lines.[20] Although not formally designated as the deadline was extended to focus the Parties' efforts on resolution, the report was shared with the mediator and that work was essential to trial preparation and, ultimately, the results obtained.[21]

Class Counsel exercised extreme patience and persistence throughout the mediation process and negotiating settlement of this matter on a class-wide basis. Class Counsel's efforts

---

[15] ECF No. 108.
[16] ECF No. 148-13 at 2.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] Exhibit 1 at ¶ 13.
[21] *Id.*

including ensuring that all adjusters and other representatives of all applicable insurance policies to be present for three mediations from October 2022 to December 2023 to make sure that all the necessary decision-makers were present. These efforts required time and coordination with at least seven different parties. Notably, there were six different applicable insurance policies which each had their own reservations regarding coverage and valuation of this case. As one example, a separate declaratory action was filed by one of the insurers seeking court determination of whether there was coverage for any of the claims in this matter under the applicable policy.[22]

Class Counsel have significant experience in this area of litigation,[23] and their expertise helped pave the way for the substantial monetary compensation and injunctive relief provided in the proposed class settlement. As outlined in their respective declarations, Class Counsel have all been appointed as class counsel in other bed bug class actions.[24] It is likely that without their experience and expertise, such significant results would not have been obtained in this matter. Specifically, without their expertise in establishing effective pest control measures, it is unlikely that injunctive relief such as contemplated by this settlement would have been achieved. For instance, knowledge of the cost of effective pest control—especially where, as here, an infestation is already untreated—led to specific negotiations to allocate funds for pest control above and beyond Defendants' annual budget for same. As a non-profit, Cross-Lines claimed that it did not have additional funds to attribute to pest control; part of the allocated settlement funds will be used to purchase and install *Active*Guard® Mattress liners on all mattresses in every unit.[25] *Active*Guard® Mattress liners kill bed bugs through contact, provide protection for up to two years,

---

[22] *American Family Mutual Ins. Co., S.I. v. Coe, et al.*, Case No. 2:23-cv-02180-HLT-RES (D. Kan.).
[23] *See generally,* Exhibits 1-4.
[24] Exhibit 1 at ¶ 6; Exhibit 2 at ¶ 8; Exhibit 3 at ¶ 9, 12; and Exhibit 4 at ¶ 11, 25.
[25] ECF No. 216-2.

and start working within ten minutes.[26] Class Counsel believe this will provide immediate relief for current tenants and do not believe this would be possible but for using a small percentage (3%) of the settlement funds for this purpose.

Further, the Settlement Agreement and Preliminary Approval paved the way for construction to begin on Phase I of Cross-Lines;[27] built decades ago, this much needed renovation represents a significant upgrade in living conditions for the residents. Although this planned renovation was not a part of the settlement itself, reaching a global settlement that ended contentious litigation was necessary to begin the work needed to renovate Phase I.

Finally, Class Counsel will continue to work on this matter, even after Final Approval. Class Counsel have dedicated—and continue to dedicate—substantial time and resources to ensuring every eligible class member who wishes to participate in the settlement has the ability to do so. Class Counsel anticipate an additional 250 staff hours and 50 to 100 attorney hours will be spent concluding this matter, including continuing to assist class members in clearing any Medicare and/or Medicaid liens for treatment related to bed bugs.[28]

## II.     Argument & Authorities

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Here, the Parties' agreement, i.e., the Settlement Agreement, provides express authority for the requested fee award and reimbursement of litigation expenses.[29] Moreover, the requested fee percentage, one-

---

[26] *Id.*
[27] The planned renovations have a value in excess of $30 million dollars to the tenants. Exhibit 1 at ¶ 18.
[28] Exhibit 1 at ¶ 28.
[29] Exhibit 7 at ¶ 2.1.

third of the Common Fund, is less than the 40% contingent fee percentage negotiated between Plaintiffs and the attorneys whom the Court appointed as Class Counsel.[30]

Both Fed. R. Civ. P. 23(h) and case law establish that the standard for setting the fee award is reasonableness.[31] An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who has firsthand knowledge of the efforts of counsel and the services provided.[32] Such an award will only be reversed for abuse of discretion.[33] Here, the requested fee is fair and reasonable under federal law and should be approved.

    **a. Attorneys' fees are calculated as a percentage of the Common Fund under Tenth Circuit law.**

The preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a percentage of the common fund created by the litigation.[34] The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."[35] Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery."[36] Comparing common fund cases and statutory fee-shifting cases, the Tenth Circuit has held, "although time and labor required are appropriate considerations [in a common fund case],

---

[30] *See Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citing *Gigot v. Cities Serv. Oil Co.*, 737 P.2d 18, 28 (Kan. 1987) ("[C]ourts have traditionally 'awarded fees in the 20%-50% range in class actions.'") (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985)). Exhibit 1 at ¶ 50.

[31] *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988); Fed. R. Civ. P. 23(h) advisory committee's note (2003) (stating that "reasonableness" is the customary measurement for common fund fees).

[32] *Brown*, 838 F.2d at 453.

[33] *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994); *Brown*, 838 F.2d at 453.

[34] *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

[35] *Wal-Mart Stores, Inc. v. Via U.S.A., Inc.*, 396 F.3d 96, 120 (2nd Cir. 2005) (quotations omitted).

[36] *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome").

the results obtained may be given greater weight when, as in this case, the recovery was highly contingent and [when] the efforts of counsel were instrumental in realizing recovery on behalf of the class."[37]

The Court in this District has repeatedly found an award of one-third of the common fund to be reasonable and appropriate.[38] Accordingly, an award of attorneys' fees equal to one-third of the common fund (after deducting reimbursement of litigation expenses) is abundantly reasonable in this case.

### b.  The fee request is reasonable under the *Johnson* factors.

The Tenth Circuit authorizes a fee award to Class Counsel to recognize the work done on behalf of, and the benefit conferred upon, all Class Members.[39] Since 1988, the Tenth Circuit has instructed district courts to analyze the reasonableness of fee awards under the factors developed in *Johnson v. Georgia Highway Express, Inc.*[40] The Johnson factors are (1) the time and labor required, (2) the novelty and difficulty of the questions presented by the case, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the

---

[37] *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988).

[38] *See, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding an award of one-third of the fund reasonable and appropriate); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) (concluding that a fee request that was 33% of the total settlement amount came within the range approved by this District and charged by counsel in other matters); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *8 (D. Kan. July 14, 2009) (noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (approving fee award equal to 33% of the common fund).

[39] *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

[40] 488 F.2d 714 (5th Cir. 1974). *See Brown*, 838 F.2d at 454-55.

case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[41]

Because the Johnson factors were developed in the context of statutory fee-shifting, the Tenth Circuit held that the scheme should be modified when applied in a common fund case to better fit the setting.[42] Not all factors will apply in every case.[43] And the weight to be given each factor varies when the court is awarding fees from a common fund.[44]

The most important difference in the application of the *Johnson* factors in common fund cases is the emphasis placed on the eighth factor—the result obtained by class counsel. In a common fund case, the result obtained is the most important factor and deserves the greatest weight.[45] As the Advisory Committee later put it when adopting the 2003 amendments to Rule 23, "[f]or a percentage fee approach to fee measurement, results achieved is the basic starting point."[46]

The other important difference in this common-fund context is the diminished role of the first Johnson factor—the time and labor involved. In *Brown*, the Tenth Circuit recognized that the differences between common fund cases and statutory fee cases cautioned against importing a formal lodestar requirement—the usual starting point in statutory fee-shifting cases—into common fund cases. Accordingly, the Tenth Circuit recast the nature of the "time and labor" inquiry in common fund cases. While "time and labor" is a factor to be considered, the court need not conduct

---

[41] *Id.*

[42] *See Brown*, 838 F.2d at 453.

[43] *Id.* at 456; *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) (trial courts need not specifically address each factor in every case).

[44] *Brown*, 838 F.2d at 456.

[45] *Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class.").

[46] FED. R. CIV. P. 23(h) advisory committee's note (2003).

a lodestar analysis to assess it.[47] Rather, the court may make a general finding regarding the expenditure of time and labor based on the record as a whole.[48]

In the context of this case, the result achieved should be given the greatest weight in determining the reasonableness of the fee request.[49]

The evolution of the allowed percentage in the Tenth Circuit can be traced to the increasing risk and cost of class actions over time—originally 25% -33 1/3% was the standard. But with the addition of an appeal under Rule 23(f), lengthy discovery, expert costs, and *Daubert*, the time, risk, and cost of prosecuting class actions has increased significantly. The standard in this Circuit has increased the range to 33 1/3% to 40%, with 40% becoming the norm, as the fee agreement between Named Plaintiffs and Class Counsel reflects.[50] But, by its application for fees and the Settlement Agreement, Class Counsel has agreed to limit its request to one-third of the Common Fund.

Here, the cash benefit of the Settlement represents a significant, concrete, immediate, monetary benefit to the settlement class. There are no claim forms to fill out, no elections to make, and no documentation to scavenge out of old records.[51] The only thing Class Members must do is not opt out of the Settlement and clear any Medicare and/or Medicaid liens for services provided due to bed bug injuries,[52] in which case the benefits are guaranteed and automatically bestowed upon them. To help aid class members in clearing Medicare and/or Medicaid liens, Class Counsel

---

[47] *Brown*, 838 F.2d at 456 & n.3; *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); *Childs v. Unified Life Ins. Co.*, No. 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by Plaintiff's Counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.").

[48] *See, e.g., Northumberland*, 2014 WL 12014020, at *3, n.1.

[49] *Brown*, 838 F.2d at 456; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (quotations omitted).

[50] Exhibit 1 at ¶ 23.

[51] *See* Exhibit 5, Exhibit A at ¶ 8.

[52] *Id.*

have been diligently working with class members, Medicare, and Medicaid to identify if any liens exists and to negotiate the amount of any existing lien.[53] As of the date of this filing, Class Counsel has cleared 24 class members with no Medicare and Medicaid liens being asserted and confirmed 62 class members did not receive treatment for injuries related to the claims being released.[54] There are an additional 34 class members currently being processed by Medicare and/or Medicaid to determine if any liens exist.[55] Further, Class Counsel has identified 9 deceased class members and have identified next of kin such that the heirs may receive the benefits of the Settlement on behalf of the deceased class member.[56]

Four of the *Johnson* factors examine, in different ways, whether the fee request is consistent with the market for legal representation of this type.[57] This makes sense in that absent Class Members do not have an express, pre-existing attorney-client relationship with Class Counsel. In determining how much Class Counsel should be paid for the work done on absent Class Members' behalf, it is appropriate to consider what clients agree to pay their lawyers when a direct attorney-client relationship exists.

Here, after arm's-length negotiations with Plaintiffs' Counsel, Plaintiffs agreed Plaintiffs' Counsel would represent Plaintiffs on a 40% contingency fee basis.[58] At the time this agreement was reached, Plaintiffs understood a 40% contingency fee was at or below the market rate.[59] The typical fee award in class actions today is around 40%. A fee agreement negotiated at arm's-length in advance is particularly relevant in a contingency case because it reflects the value of the service

---

[53] Exhibit 2 at ¶ 11.
[54] Exhibit 2 at ¶ 12-13.
[55] Exhibit 2 at ¶ 13.
[56] Exhibit 2 at ¶ 10.
[57] These factors are: (5) the customary fee; (6) whether the fee is fixed or contingent; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
[58] Exhibit 1 at ¶ 23.
[59] Exhibit 1 at ¶ 33-35.

to be provided before the full difficulty and uncertainty of the case is known and while the risk of a loss still exists.[60]

Another way of comparing the fee request to the market for comparable legal services is to consider awards in similar cases (Johnson factor #12). The 40% fee request in this case is consistent with what many federal courts in this Circuit have awarded in other class actions.[61]

Seven of the Johnson factors examine, in different ways, Class Counsel's dedication of time, effort, and skill, and commitment to the case.[62] As noted above, these factors are less important in a common fund case (rather than a fee-shifting case) because the most important determinant of the lawyer's contribution—and therefore the most important factor in setting the fee—is the outcome the lawyer was able to achieve.[63] However, a few of these factors deserve specific attention.

Class Counsel invested significant time and money in this Action with no guarantee of reimbursement or recovery.[64] As experienced class action litigators, Class Counsel knew what needed to be done and what tasks were best calculated to advance the likelihood of certification and to marshal the proof needed to prevail in court or in a favorable settlement.[65] That said, the Court knows as well as anyone the challenges and complexity of cases like this and the risk Class Counsel undertook in representing the Class. What *Brown* instructs the judge to do is to satisfy

---

[60] *See Nieberding*, 129 F.Supp.3d at 1250 (percentage in representation agreement between plaintiff and counsel "provides some market context suggesting that a fee award in this range is a reasonable one.").

[61] *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029, 2019 WL 2185081, at *2-3 (D. Kan. May 21, 2019) (citing fee awards in the Tenth Circuit based on 40% of the common fund).

[62] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (7) any time limitations imposed by the client or the circumstances; (9) the experience, reputation, and ability of the attorneys; and (10) the undesirability of the case.

[63] *See Brown*, 838 F.2d at 456.

[64] Exhibit 1 at ¶ 25-26, 36; Exhibit 3 at ¶ 14-16; Exhibit 4 at ¶27-29.

[65] Exhibit 1 at ¶ 9-19.

himself that the time and effort of Class Counsel contributed to the result achieved for the Class

Members.[66]

The other *Johnson* factors also support approval of the fee request. Although these factors

do not merit as much weight as the results obtained, Plaintiffs provide a summary of each below:

1. **Time and Labor:** This is important in statutory fee-shifting lodestar cases, but it is only important here to show the case was not a lay down winner. Class Counsel invested substantial time and labor in researching, investigating, prosecuting, and resolving this case.[67] Moreover, Class Counsel are continuing to invest time and resources to the settlement administration, including obtaining releases from Medicare and Medicaid for all class members.[68]

2. **Novelty and Difficulty:** Class actions are known to be complex and vigorously contested. The claims involve difficult and highly contested issues of class certification and substantive law. Class Counsel litigated such difficult issues against the vigorous opposition of highly skilled defense counsel. Moreover, Defendants asserted a number of defenses to the settlement class members' claims that would have to be overcome if the matter continued to trial. Despite these hurdles, Class Counsel obtained a significant recovery and injunctive relief for the settlement class.

3. **Skill Required:** Only a few firms handle class litigation because of the nuanced intersection of complex procedural class action law and complex substantive law and the expense of funding such a large and potentially long-lasting endeavor. Defendants are represented by skilled class action defense attorneys who would spare no effort or expense in the defense of their client. This matter could have been litigated for years. Without the experience, skill, and determination displayed by all counsel involved, by the mediator in moving the parties toward settlement, and by the Court in actively managing the matter, the settlement would not have been reached.

4. **Preclusion of other Cases:** Counsel has only a finite number of hours to invest in class action cases and must turn away other opportunities to pursue cases in which they have already accepted representation.

---

[66] *Brown*, 838 F.2d at 456. In *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015). Judge Parsley noted the time-and-labor "factor is the most important in a fee shifting case, its relevance in the contingent fee common fund class actions such as this one is to show that the case was not a lay-down winner where little time was invested and little risk actually assumed." 2015 WL 5794008 at *6. The percentage method for awarding fees rewards good results, promotes efficiency, and aligns the interests of class counsel with the class members. *Id.*
[67] Exhibit 1 at ¶ 25-26, 36; Exhibit 3 at ¶ 14-16; Exhibit 4 at ¶27-29.
[68] Exhibit 1 at ¶ 28; Exhibit 2 at ¶ 10-15.

5. **Customary Fee:** Named Plaintiffs and Class Counsel negotiated and agreed to prosecute this case based on a 40% contingent fee. This fee represents the market rate and is the "customary fee."[69]

6. **Fixed Hourly or Contingent Fee:** Named Plaintiffs and Class Counsel negotiated a contingent fee agreement, which also supports the fee award.[70] "Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel."[71] Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. If Class Counsel lost on the merits, that is thousands of hours and many dollars down the drain. Even prevailing on the merits does not guarantee class counsel will get paid at all.[72] Simply put, it would not have been economically prudent or feasible if Class Counsel were to pursue the case under any prospect that the Court would award a fee on the basis of normal hourly rates. The agreed-upon contingent fee reflects the value of this matter as measured when the risks and uncertainties of litigation still law ahead.[73]

7. **Time Limitations:** This was not a significant factor in this case and should be treated as neutral by this Court.

8. **Amount in Controversy and Results Obtained:** The amount in controversy was hotly disputed and difficult to determine. Here, there is a significant cash recovery of $4,600,000.00 for the Settlement Class and injunctive relief to remedy the alleged habitability issues at the property.[74] This settlement was achieved despite the existence of serious disputes as to liability. There are no claim forms for class members to fill out, and the only thing class members have to do to receive their money is work with Class Counsel to clear any Medicare and/or Medicaid liens for treatment of bed bug injuries.[75] Here, the settlement terms are fair, adequate, reasonable, and in the best interests of the settlement class members. As detailed above, this is the most significant factor in awarding attorneys' fees in the class action context.

9. **Experience, Reputation, and Ability of Attorneys:** Class counsel have extensive experienced and demonstrated ability in complex class action and consumer cases.[76]

10. **Undesirability of the Case:** Most class counsel will not touch a smaller case such as this. Few law firms would be willing to risk investing the time and expenses necessary to

---

[69] *Nieberding*, 129 F. Supp. 3d at 1250 (percentage in representation agreement between plaintiff and counsel "provides some market context suggesting that a fee award in this range is a reasonable one").

[70] Exhibit 1 at ¶ 23.

[71] *Nieberding*, 129 F.Supp.3d at 1250 (*citing Freebird, Inc.*, 2013 WL 1151264, at *4).

[72] *See, e.g., Schell v. Oxy USA, Inc.*, 814 F.3d 1107, 1112 and 1125-26 (10th Cir. 2016) (despite winning summary judgment in favor of plaintiff class after seven years of litigation, no attorneys' fees were awarded).

[73] *CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012); *Chieftain Royalty Co. v. Laredo Perto., Inc.*, No. CIV-12-1319, 2015 WL 2254606, at *2 (W.D. Okla. May 13, 2015).

[74] Exhibit 7 at ¶¶ 2.1 and 2.9.

[75] Exhibit 5, Exhibit A at ¶ 8.

[76] Exhibit 1 at ¶ 3-8; Exhibit 2 at ¶ 3-8; Exhibit 3 at ¶ 3-13; Exhibit 4 at ¶ 3-26.

prosecute this action for multiple years with only an uncertain prospect of recovery. Further, Defendants are worthy adversaries that will fight in bitter, adversarial litigation.

11. **Nature and Length of Professional Relationship:** Although of little relevance in a case where the client does not engage regularly in litigation to warrant a discounted hourly rate, this factor supports the requested fee. Class Counsel met and worked with Named Plaintiffs many times throughout the class lawsuit, including before the lawsuit was filed, to prosecute the claims.[77]

12. **Awards in Similar Cases:** Courts in this District have routinely held that one-third of the common fund is the usual fee award.[78]

Thus, the analysis of the *Johnson* factors under federal common law strongly demonstrates approval of the fee request is warranted.

### c. The request for reimbursement of litigation expenses is reasonable under federal common law.

"As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred . . . in addition to the attorney fee percentage."[79] As described above, Class Counsel has obtained an excellent recovery for the benefit of the settlement class members, which necessitated incurring expenses that Class Counsel paid. To date, Class Counsel have advanced over $90,000.00 in prosecuting and resolving this matter.[80] Class Counsel may incur additional expenses between now and the Final Fairness Hearing. Named Plaintiffs respectfully request reimbursement of litigation expenses that have been and may be advanced or incurred by Class Counsel in prosecuting and resolving this class action lawsuit. All these expenses were reasonably and necessarily incurred and are

---

[77] Exhibit 1 at ¶¶ 38-40.
[78] *See, e.g., In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 113-14 (D. Kan. 2018); *Nieberding*, 129 F. Supp. 3d at 1250; *KPH Healthcare Services, Inc. v. Mylan, N.V.*, No. 20-2065-DDC-TJJ, 2024 WL 3360499, at *4 (D. Kan. July 9, 2024) (collecting cases).
[79] *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (citations omitted); Fed. R. Civ. P. 23(h) (authorizing the Court to reimburse counsel for "non-taxable costs that are authorized by law").
[80] Exhibit 1 at ¶ 37; Exhibit 1, Exhibit A.

directly related to the prosecution and resolution of the class action lawsuit.[81] The costs include routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts, mediation, document production and review, which are typical of large, complex class actions such as this.[82] As such, this request for reimbursement is fair and reasonable.

### d.  A service award of $5,000.00 for each Named Plaintiff is reasonable.

Each of the Named Plaintiffs respectfully request a service award in the amount of $5,000.00, which represents 0.1% of the Common Fund. Named Plaintiffs and Class Counsel submit that this amount is reasonable and fair considering their time, labor, and personal sacrifice to achieve an exceptional recovery and injunctive relief on behalf of the settlement class members, especially in a case with serious merits defenses that threatened to wipe out the vast majority of the settlement class members' claims. Named Plaintiffs carried this case from a three-person case to a certified class action and then marched the case to victory and a significant settlement for hundreds of current and former tenants.[83] Their service and personal sacrifice were extraordinary and led directly to the extraordinary settlement the class obtained.

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above and beyond what the typical class member is receiving.[84] This Court has previously found that a service award "perform[s] the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of [serving

---

[81] Exhibit 1 at ¶ 36-37; Exhibit 3 at ¶ 16; Exhibit 4 at ¶ 29; Exhibit 1, Exhibit A.

[82] Exhibit 1 at ¶ 37; Exhibit 1, Exhibit A.

[83] Exhibit 1 at ¶¶ 38-41.

[84] *See, e.g., Tommey v. Computer Scis. Corp.*, No. 11-Cv-02214-EFM, 2015 WL 11070580, at *1 (D. Kan. May 27, 2015) (approving $5,000.00 service award to the named plaintiff; *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (approving.a $5,000.00 service award to each named plaintiff); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (awarding a $5,000.00 service award to named plaintiff).

as the] named class representative."[85] The Court must "examine whether the award to [the class representative] can be justified as payment at a reasonable rate for reasonable time expended on services rendered that were helpful to the litigation and did not duplicate what could be performed less expensively by counsel."[86]

"In determining the appropriateness of an incentive award to a class representative, the Court should consider the following three factors: (1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation."[87] Each of these factors, applied in this case to the service of Named Plaintiffs, support the requested awards. Named Plaintiffs actively participated throughout the discovery process, gathering documents and information to respond to Defendants' discovery requests, as well as sitting for depositions.[88] Moreover, Named Plaintiffs were offered the chance to settle their individual claims in the case, but they chose to pursue the claims on behalf of a putative class of tenants.[89] Named Plaintiffs have spent over two years pursuing these claims on behalf of themselves and the settlement class members, and it is estimated that they each contributed at least 100 hours of time in the course of the case answering discovery, preparing for and sitting for a full day deposition, meeting with their lawyers, etc.[90]

Simply put, Named Plaintiffs' powerful credibility and commitment to serving as class representatives and plaintiffs were, without question, a strong force in causing this class settlement. Named Plaintiffs should be provided a service award to compensate them for their time, efforts

---

[85] *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1251 (D. Kan. 2015) (internal quotations and citations omitted).
[86] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017).
[87] *See Freebird, Inc. v. Cimarex Energy Co.*, 264 P.3d 500, 511 (Kan. 2001).
[88] Exhibit 1 at ¶ 40.
[89] Exhibit 1 at ¶ 18, 39.
[90] Exhibit 1 at ¶ 40.

and sacrifice. A service award will also incentivize others to step forward and take on difficult cases like this one.

### III.     Conclusion

WHEREFORE, Class Counsel respectfully request the Court enter an Order awarding Class Counsel's attorneys' fee in the amount of $1,501,401.16, reimbursement of litigation expenses in the amount of $91,287.80, and service awards to each Named Plaintiff in the amount of $5,000.00 to be paid from the Common Fund.

Respectfully submitted,

*/s/ Jenilee V. Zentrich*
BELL LAW, LLC
Bryce B. Bell          KS#20866
Jenilee V. Zentrich     KS#29098
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
JZ@BellLawKC.com

HEARTLAND CENTER
FOR JOBS AND FREEDOM
Gina Chiala            (*pro hac vice*)
Amy Sweeny Davis       (*pro hac vice*)
4120 A. Baltimore
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org
amysweenydavis@jobsandfreedom.org

**LIPMAN LAW FIRM, P.C.**
Jeffrey M. Lipman      (*pro hac vice*)
1454 30th St., Suite 205
West Des Moines, Iowa 50266
T: 515-276-3411
F: 515-276-3736
jeff@lipmanlawfirm.com

***Attorneys for Plaintiff and Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 18, 2024, the above was electronically filed with the Clerk of the Court using the CM/ECF e-Filing system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jenilee V. Zentrich*